# COURT OF APPEALS.

## CHARLES S. BRYCE, appellant, agt. THE LORILLARD FIRE INSURANCE COMPANY, respondent.

A policy of insurance misstated the section of a warehouse in which the property intended to be insured was located as section C, whereas it was really section A.

The sections were in reality separate buildings, and so considered and surveyed for purposes of insurance.

The misstatement was written in the policy, on the applicant's instruction, to insure property in Patterson's stores C (the Patterson stores being the warehouse), the insurer supposing that C meant section C of the warehouse.

At the time of applying the applicant had with him, for the purpose of effecting the insurance, the warehouse receipt given upon the storage of the property in the Patterson stores, and describing the property, but not specifying the section in which it was.

The receipt contained, in the upper left hand corner, the following: " C, No. 51 ;" the C referring to the book from which the receipt was cut, and the 51 being the number of the receipt. He did not deliver the receipt to the insurer, or instruct him as to the locality of the property, otherwise than to insure in Patterson stores C.

The insurer would have insured in A as readily as in C.

The property was destroyed by a fire, burning section C before it consumed A.

In an action brought to reform the policy and recover under it, judgment was given for the defendant. The plaintiff's only important exceptions on the trial, were to evidence showing the character of the sections as separate buildings. He, however, stated no ground of objection. There was evidence upon which all the judge's findings of fact, and his additional findings and refusals to find, could be based.

The judgment was affirmed at the general term.

*Held*, that the findings could not be disturbed; as in order to a review by this court of a finding of fact, there must be no evidence to support it; and in order to such review of a refusal to find a fact, the evidence in favor of the proposed finding must be clearly conclusive.

Bryce agt. Lorillard Fire Insurance Company.

That the policy could not be reformed, as there was neither a mistake of both parties whereby the intentions of both parties failed of expression, nor a mistake of one party causing a failure to express his intention, with a fraudulent attempt in the other party to take advantage of such failure.

*Wells* agt. *Yates*, 44 *N. Y.*, 525, distinguished.

*Coles* agt. *Bowne*, 10 *Paige*, 534, followed.

That the statement of the location of the property, written in the policy upon the application of the insured, was a warranty, and its truth a condition precedent to any liability on the part of the insurer,.though its truth is not essential to the risk, nor an inducement to the insurer.

The latent ambiguity to which the statement is subject, does not destroy its character as a warranty; that such ambiguity may be, and in this case is, explained. That the character of a warranty, as such, does not depend on the degree of obscurity or perspecuity of its expression.

*The West. Ins. Co.* agt *Cropper* (32 *Penn.*, 351), and *F. Ins. Co.* agt. *Updegraff* (43 *id.*, 350), distinguished.

That the maxim " *Falsa demonstratu non nocet* " does not apply; in order that this maxim should apply, there must be, after casting out the false, enough left to constitute an adequate, sufficient description, pointing out, with convenient certainty, the property intended.

That the evidence taken against the plaintiff's exception was competent.

THIS was an action, brought in the superior court of the city of New York, for a reformation of a policy of insurance, and a recovery for a loss under the policy as reformed.

The plaintiff claimed, through two assignments, under the party to whom, by the terms of the policy, any loss thereunder was payable.

The complaint, after stating in the usual manner a cause of action, for a loss under the policy, by the destruction by fire of the property, twenty-seven barrels of whisky therein insured, set forth, in the words of the policy, the description of the property insured, as follows: " Merchandise * * * contained in letter C Patterson Stores, So. Front, below Pine street, Philadelphia;" and then alleged that the said merchandise consisted of the said twenty-seven barrels of whisky, and was, at the time of the issuing and delivery of said policy, and thereafter, up to and at the time of the happening of the fire aforesaid, in letter A of the said Patterson stores. That,

nevertheless, the said merchandise consisting of whisky aforesaid, was intended to be, as well by the defendants as by said Larens (Larens being the insured), "insured as merchandise then kept and thereafter to be kept in said section letter A in the said building, and was in fact there insured, and the statement that the same was in section letter C in said building, as in the description clause stated, was wholly through inadvertance and mistake, and was not, in fact, according to the contract of insurance as made between said Larens and the defendants."

The answer denied the assignments, and also all that part of the complaint just above quoted, beginning with the words "That, nevertheless, the said merchandise consisting of whisky, as aforesaid," and alleging a mistake in describing the location of the whisky insured.

The answer also set up as a defense, that Larens, at the time of the insurance, represented to the defendant that the said merchandise was contained in the building known as letter C, Patterson stores, south front, below Pine street, Philadelphia, and that such representation was written in the policy, forming part of it, and was false.    *.

The issues raised by this answer were tried at special term, before the Hon. Samuel Jones, on the 20th day of March, 1871, and, on the 30th of December, 1871, a decision was rendered, directing the dismissal of the complaint on the merits, with costs to the defendant.

The court found, as facts, *first,* that the assignments set forth in the complaint had been duly made; and, *second,* that the policy as it stood, and as it was alleged in the complaint, truly represented the contract as made between the defendant and Larens; and as conclusions of law, first:

That Larens was not insured against, and the plaintiff could not recover for, the loss alleged in the complaint; and, second, that the plaintiff was not entitled to have the policy reformed. Judgment was duly entered on the decision.

The plaintiff excepted to the second finding of fact, and

to both the conclusions of law, and appealed from the judgment.

Upon the settlement of the case the plaintiff proposed additional findings, some of which the judge found as proposed, and some of which he refused to find as proposed, but found in a modified form; to the refusals to find and to the modified findings the plaintiff excepted.

The judge found that Larens had twenty-seven barrels of whisky stored in the Patterson stores, South Front below Pine street, Philadelphia; which warehouse was divided into eight sections, known as sections A, B, C, D, E, F, G and H, and received for the whisky a warehouse receipt not specifying the section of the warehouse in which the whisky was stored, and upon the upper left hand corner of which was the following: " C, No. 51;" that the letter C referred to the book from which the receipt was taken, and not to the section of the warehouse; and the words No. 51 indicated the number of the certificate; that Larens employed an insurance broker named Brown to effect insurance on said whisky, and handed to Brown the warehouse receipt "for that purpose;" that Brown applied to the defendant's agent, Lancaster, to effect the insurance, and "apparently reading from a memorandum in his hands, instructed Lancaster to insure whisky in Patterson stores, C;" that Lancaster understood the letter C mentioned in such instructions, referred to compartment C of the Patterson stores; that Larens did not either personally, or by his agent, Brown, make any representation to the defendant as to the location of the whisky, other than such instruction.

That with the exception of section H, which was erected later than the rest of the warehouse, there was no break either in the front or rear walls of the warehouse; that the sections were separated by substantial brick walls with no connection save for heating apparatus, and an iron shafting running through from H to A, the arches which existed between the sections being filled in with brick; that the fire

commenced at H and proceeded to A, and the whole ware-house was destroyed; that the defendant would have insured the whisky in A as cheerfully as in C; that Larens had no knowledge in what particular section of the warehouse the whisky was stored, or until after the fire, that the words "letter C" had been inserted in the policy.

The judge refused to find that the warehouse was "sub-divided" into sections, but instead thereof found as above, that it was "divided;" and refused to find that Larens handed Brown the warehouse certificate "as furnishing the requisite information to enable him to effect the insurance," but instead thereof found as above, that he employed him to effect the insurance and handed the receipt to him "for that purpose," and refused to find that on the application for insu-rance, Brown handed Lancaster the receipt and left it with him to enable him to make out the policy, but instead thereof found as above, that Brown "apparently reading from a memorandum, instructed Lancaster to insure whisky in Pat-terson stores, C;" and refused to find that Lancaster supposed the letter C on the warehouse receipt, meant section C of the warehouse; but instead thereof found as above, that Lan-caster understood the letter mentioned in Brown's instructions to him to refer to compartment C of the warehouse; and refused to find that there was no representation to the defend-ant as to the location of the whisky other than appears in the receipt, but instead thereof found as above, that there was no other representation than Brown's instructions.

Though the evidence before the trial was not entirely with-out conflict, yet there was evidence upon which all the find-ings and refusals to find, may be based.

The plaintiff objected to the defendant's asking whether Lancaster would refuse to take a risk in one section of the warehouse and accept a risk in another; whether he repre-sented several companies; whether in making a survey of the warehouse for the purposes of insurance, the different sections were surveyed and considered as separate buildings;

and (the plaintiff having shown that the sections had a shaft running through them) whether shafts do not frequently run through a whole row of entirely different buildings built at different times; but he stated no ground for any of his objections. The objections were overruled and exceptions taken by the plaintiff. Under these objections it was testified that whether the agent would refuse a risk in one section and accept one in another, would depend on the amount of insurance he had in any one section; that he represented ten companies; that in surveying the warehouse for purposes of insurance, the sections were surveyed and considered as separate buildings, and that shafting does frequently run through a row of entirely different buildings built at different times.

The appeal was heard at the general term on the 11th of March, 1873, before MONELL, FREEDMAN and CURTIS, JJ., and a decision rendered on the 5th day of April, 1873, affirming the judgment below. MONELL, J., writing the opinion and his associates concurring.

The appeal to this court was argued on the 2d of December, 1873, and the decision rendered on the ninth of the same month.

AUGUSTUS C. FRANSIOLI, *for appellant*, cites as to the cases in which a written contract may be reformed, 1 *Story Eq. Jur.*, § 155; *Wells* agt. *Yates* (44 *N. Y.*, 525); *Cole* agt. *Bowne* (10 *Paige*, 534). As to the responsibility of the defendant for the mistake in the policy, *N. Y. & Wash. Print. Tel. Co.* agt. *Dryburg* (35 *Penn. St.*, 298). As to the mode in which a warranty must be expressed, 2 *Parsons on Con.* (5*th ed., p.* 492 *and note c*). As to the responsibility of the defendant for obscure statements in a policy, *The Western Ins. Co.* agt. *Cropper* (32 *Penn. Stats.* [8 *Casly*], 351, 355); *Franklin Fire Ins. Co.* agt. *Updegraff* (43 *Penn.* [7 *Wright*], 350); *Parsons on Con.* (5*th ed.,* 506, *note n*). As to the explanation, by parol evidence, of technical expressions in a particular trade or business, 1 *Greenl. on Ev.* (§§ 278,

277, 280); 2 *Parsons on Cont.* (5th ed., *p.* 555). To the effect that untrue representations, in order to effect the right to recover, must be material and fraudulent, *Burrett* agt. *Saratoga Ins. Co.* (5 *Hill*, 188); *Galis* agt. *Madison Co. Ins. Co.* (2 *Com.*, 49). As to the maxim, " *Falsa demonstratio non nocit*," and its applicability to this case, *Burr* agt. *Broadway Ins. Co.* (16 *N. Y.*, 267); *Strong* agt. *North Am. F. Ins. Co.* (*Gen.Term*, 6th *Dis.*); *Yonkers & N. Y. F. Ins. Co.* agt. *Hoffman F. Ins. Co.* (6 *Robt.*, 316); *Tyler* agt. *The New Amsterdam F. Ins. Co.* (4 *Robt.*, 151); *Lohnes* agt. *Rutgers F. Ins. Co.* (3 *Keyes*, 416).

CARLISLE NORWOOD, Jr., *for respondent*, cites, as to the cases ·in which a written contract may be reformed, *Pennell* agt. *Wilson* (2 *Abb. Pr.* [*N. S.*], 466); *Boardman* agt. *Davidson* (7 *Abb. Pr.* [*N. S.*], 439 [*p.* 441]). As to warranty in the law of insurance, *Angell on Fire and Life Ins.* (§ 140); *Flanders on Fire Ins.* (204); *De Halm* agt. *Hartly* (1 *Tenn. Rep.*, 385); *Jennings* agt. *The Chenango Co. Mutual Ins. Co.* (2 *Denio*, 75); *Chase* agt. *Hamilton Ins. Co.* (20 *N. Y*, 57); *Kennedy* agt. *St. Lawrence Mutual Ins. Co.* (10 *Barb.*, 289); *Wall* agt. *E. R. Mutual Ins. Co.*, (7 *N. Y.*, 370); *Lappin* agt. *Charter Oak Fire and Marine Ins. Co.* (58 *Barb.*, 348); *Shoemaker* agt. *Glens Falls Ins. Co.* (60 *Barb.*, 100); *Pierce* agt. *Empire Ins. Co.* (62 *Barb.*, 636); *Angell on Ins.* (§ 754); *Delonguemans* agt. *The Tradesmen's Ins. Co.* (2 *Hall*, 589); *Ripley* agt. *Ætna Ins. Co.* (30 *N. Y.*, 157, *citing many cases*); *The First National Bank of Ballston Spa* agt. *The Prest., &c., of the Ins. Co. of North America* (50 *N. Y.*, 45). As to the review in this court of findings of fact and refusals to find, *Colwell* agt *Lawrence* (38 *N. Y.*, 71); *Metcalf* agt. *Mattison* (32 *N. Y.*, 464); *Doty* agt. *Carolus* (31 *N. Y.*, 547); *Ostrander* agt. *Fellows* (39 *N. Y.*, 350); *Finch* agt. *Parker* (49 *N. Y.*, 1 [*p.* 8]). To the effect that objections to evidence are not reviewable in this court, when they are unaccompanied by any statement of

their grounds, *Shaw* agt. *Smith* (3 *Keyes*, 316); *Kenne* agt. *Clark* (2 *Abb. Pr. Rep.* [*N. S.*],      ); *Ayrault* agt. *The Pacific Bank* (47 *N. Y.*, 576); *Erickson* agt. *Smith* (38 *N. Y.*, 473)..

FOLGER, *J.*—The several exceptions to findings of fact, and to refusals to make findings of fact as requested, are not well taken. To make a legal error in a finding of fact which this court may review, there must be no evidence in the case upon which the finding may be based. To make such error in a refusal to find, the evidence must be clearly conclusive in favor of the finding proposed. There was, in this case, evidence on which each of the findings can be based ; and there is evidence which will sustain each of the refusals to find. The learned justice who tried the cause has seen fit to rely upon that evidence, and we may not review his action in that respect.

The claim of the plaintiff that the contract of insurance was erroneous through mistake and should have been reformed is not tenable.

The mistake which will warrant a court of equity to reform a contract in writing must be one made by both parties to the agreement, so that the intentions of neither are expressed in it; or it must be the mistake of one party by which his intentions have failed correct expression, and there must be fraud in the other party in taking advantage of that mistake and obtaining a contract with the knowledge that the one dealing with him is in error in regard to what are its terms.

The findings show that the defendants made just the contract which they from the first intended to make, and just the one which they understood the plaintiff's assignor meant to make. Whatever may have been the intention of the insured or his agent, there is nothing in the findings nor in the evidence, which shows or has a tendency to show that the defendants or their agents purposed anything else than to insure property in section C of the Patterson stores. Such being

the case, it is not in the power of the court to reform the instrument, for thereby violence will be done to the intentions of the defendants. Nor is there found fraud in the defendants or their agents. Nor is there evidence which would warrant such findings.

The case cited by the plaintiff of *Wells* agt. *Yates* (44 *N. Y.*, 525), is not analagous to this. That was the case of a mistake in the attempt by the vendor to perform, by the execution of a conveyance, a pre-existing contract for the sale of land. The assignee of the vendor, knowing that the conveyance did not contain an exception stipulated for in the contract, and that the vendor was in an error in omitting it, still accepted the deed and refused to correct the mistake, intending to reap the profit of it. The conveyance was then reformed on the ground of the fraud of the assignee of the contract, and on the ground that it was an erroneous performance of a contract as to the terms of which there was no dispute. These two conditions cannot be predicated of the contract in the case in hand.

Nor is this case like unto *Cole* agt. *Bowne* (10 *Paige*, 534). There the chancellor refused to enforce a contract for purchase of land resting in parol, on the ground that the vendee did not understand and intend it as the vendor did. The vendors were seeking to enforce a contract, as they claimed it to be against one who denied the making of that contract, and averred that he made another and different one. Specific performance was refused, because the doubt was so great whether both the parties understood alike the agreement to be implied from the defendant's bid. To allow this contract of insurance to be reformed and then enforced, would be to do just what the court then refused to do, for here as there, the defendants did not understand the terms of it, as they are claimed by the plaintiff to have been, and to impose it upon them in those terms, would be to make a contract for them which they did not intend to enter into.

The policy of insurance is then to be taken as the contract

of the parties. It was, then, a contract to insure property contained in letter C, Patterson stores, South Front, below Pine street, Philadelphia. And that description of the place of deposit of the property, written into the policy in accordance with the application of the insured, was a warranty by him of its particular location, and the truth of that warranty became a condition precedent to any liability to him from the defendants. And it was a warranty and a condition precedent, not to be avoided by the fact that the truth of the description was not essential to the risk, nor an inducement to the defendants to enter into the contract. This rule is so well established in the law of insurance as that it must be adhered to, though it may work hardship in a particular case.

Nor does it depend upon its freedom from a susceptibility to a double interpretation that a description is a warranty, whatever is expressed, whether with perspecuity or obscurity, that is what is warranted Other rules then come in to assist in the discovery of what the language means. If there be latent ambiguity that may be removed by testimony. And here there is a latent ambiguity.

The language here used is the language of the parties. It does not assert, and therefore warrant, that the property is " contained in letter C, Patterson stores, &c." The phrase "letter C," taken by itself, has a meaning. But by reason of collateral matter and extrinsic circumstances, an ambiguity arises. It had an especial or technical meaning to those engaged in the business of putting property on storage in the Pennsylvania warehouse, and to those who solicited and who wrote insurance upon it. When the testimony gives that meaning, it indicates but one thing, that part of the Patterson stores which is designated to owners of property and to insurers of it as the section or division C thereof. It is impossible to say, in the light of all the circumstances disclosed by the pleadings and the testimony, that letter C of the Patterson stores is not section C thereof, and that a description of property, as that " contained in letter C, Patter-

son stores," does not mean property deposited in that division of that warehouse known and designated as letter C. It is impossible to say that it does mean property mentioned in a book C of the proprietors of that building.

The doctrine maintained in *The West. Ins. Co.* agt. *Cropper* (32 *Penn.*, 351), and *F. Ins. Co.* agt. *Updegraff* (43 *id.*, 350), will not aid the plaintiff. Those cases hold that if the clauses of a policy be obscure, it is the fault of the insurer, for he it is who has penned the language, so that if it be capable of two interpretations, that must be adopted which is most favorable to the insured.

There is not room here for but one interpretation. "Letter C Patterson Stores," has but one meaning. The latent ambiguity prevents that being seen on the bare reading of the phrase; when that ambiguity is done away with, by the testimony, there is no difficulty in interpreting the words and reaching their sense.

The plaintiff invokes the aid of the maxim "*Falsa demonstratio non nocit.*" It may be conceded that there is a false description of the location of the property. But that is not enough to bring into operation the rule embodied in that maxim. There must be in the description so much that is true, as that casting out that which is false, there is still enough left to clearly point out the place in which is the property.

Indeed, an authoritative definition states, and qualifies the rule more narrowly than this, viz.: "As soon as there is an adequate and sufficient definition, with convenient certainty of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it" (*Broom's Leg. Max.*, 464 [605]). But it needs not so to restrict in the case in hand. The phrase, "letter C," as meaning the place of storage of the property, is a false showing. If that phrase is rejected, then the whole description is contained in the words "Patterson stores, So. Front, below Pine street, Philadelphia." These words do, as far as they go in meaning, tell

the truth as to the situation of the property. They do not, though, tell the whole truth, nor the whole essential truth. The word Philadelphia alone would tell the truth, but not the whole of it. To be made certain of the exact place of deposit of the property for the purposes of this contract, it needed not only to know in what city it was, and in what street therein, but in what building in that street; and if that building is so constructed as to be of many divisions, practically separate each from the other, for safety from fire, and treated as distinct in making contracts of insurance, certainty of description needed some explanation of what division it was in. This was the office of the phrase "letter C." If that phrase be rejected and no other truthful phrase be inserted, the description fails to show just where in the Patterson stores the property was placed. That phrase, though false, did harm; for it pointed the description to the wrong place, and some equivalent for it was needed to complete a truthful description.

The evidence taken against the objection of the plaintiff was competent. It was to show that this part of the description, though wrong, was harmful, and, therefore, not to be rejected. It was to show that though there was a warehouse known as the Patterson stores, it was one made up of several divisions, as distinct for the purpose of storage of property and of the insurance of it against fire as the dwelling-house in a block, and that to know the place of the property needed the naming of the section of the building in which it was, as much as if the risk had been on household goods, their situation would not have been pointed out short of the expression in the description of the number of the house in the block.

We are of the opinion that the defendants established a strict legal defense to the action of the plaintiff; as we sit here to declare the law and not to propound a code of morals, we must sustain it. The judgment appealed from must be affirmed, with costs to the respondents.

FOLGER, J., reads for affirmance. All concur.