## Samuel C. Shepard v. Catharine L. Shepard and others.

*Foreclosures: Bill of complaint: Description of premises: Mortgage: Variance.* The fact that a foreclosure bill describes the premises mortgaged in different terms from those used in the mortgage itself, is of no consequence, where the mortgage is sufficiently identified and the premises described in the bill are substantially the same as those described in the mortgage. If either party desires a judicial settlement as to what precise parcels the description attached to, a proper case therefor should be made and be followed by the proper proof.

*Answer: Annexing copy deed: Pleading: Evidence.* The attaching to an answer of what is alleged to be a copy of a deed, upon which the defendant bases certain claims, operates only to amplify the pleading; and the deed is not thereby proved and made evidence in the case.

*Plats: Lots and blocks: Evidence: Judicial notice.* The court cannot take judicial notice of the relative situation of lots and blocks on a map or plat which is not introduced in evidence, or as to how they apply to the ground.

*Mortgages: Mistake: Description of premises.* A mortgagee who has received in good faith a mortgage executed by his debtor and his wife, of property the title to which of record was in the husband, is not liable to have his mortgage invalidated as to a portion of the premises, on a claim by the wife of the mortgagor that she held such portion by an unrecorded deed from her husband, and that the same was included in the mortgage by a mistake of her husband, for which mistake it is not claimed the mortgagee was in any wise responsible.

*Mistake: Description of premises: Design to exclude certain lands.* The law requires very strong proof to support a real charge of mistake in a deed, and it has never gone so far as to convict a mortgage of embracing lands which ought not to have been put in, although in a condition to be so mortgaged and deliberately included by the mortgagor himself, on the naked ground that the mortgagor swears he entertained a secret design to exclude such lands from the description.

*Mortgages: Fraud: Conspiracy: Unrecorded deed.* Where a father had deeded premises to his sons, which the latter had afterwards reconveyed to him for the purpose of enabling him to mortgage the same to secure a debt, and these facts were made known to the mortgagee at the time, a strong showing will be required to make out the defense on the father's testimony on behalf of his sons, that the property had been reconveyed to them by him prior to the mortgage by a deed which was not of record, and that the mortgagee was informed of this deed but conspired with the father to defraud his sons by taking the mortgage and placing it on record in advance of their deed.

*Title: Notice: Blind remarks: Ambiguous hints.* Blind remarks and ambiguous and misleading hints as to the state of the title, which were not understood by the mortgagee to have the meaning that is afterwards sought to be put upon them, are not very conclusive as a showing of notice of an unrecorded deed which is claimed to have been the result of a sudden change of plans of which the mortgagee had no notice.

*Heard January 19. Decided April 10.*

Appeal in Chancery from Clinton Circuit.

*Spaulding & Cranson,* for complainant.

*R. Strickland,* for defendants.

GRAVES, J:

It appears from the case, that Alpheus F., William S. and George Shepard are sons of William Shepard; that Catherine L. is his wife, and that complainant is his nephew; that prior to and until some time after November 20, 1871, William Shepard and his son George Shepard and Jacob L. Button carried on business at Shepardsville, in Clinton county, as partners under the style of "W. & G. Shepard & Co.;" that the firm became indebted to complainant for money borrowed in something like two thousand two hundred dollars, and he insisted on payment or security; that the firm thereupon, and on the day before mentioned, gave him their promissory note for two thousand three hundred dollars, with interest at ten per cent., and William Shepard and his wife Catherine executed a mortgage to him as collateral security, which he put on record on the 27th of the same month.

This mortgage was wholly prepared by William Shepard, and nothing passed between Mrs. Shepard and complainant concerning it.

In March thereafter, and toward the latter part of that month, creditors proceeded against the firm in bankruptcy, and some time after September 12, 1874 (but the true time of which does not appear in the printed record), the complainant filed the present bill to foreclose the mortgage before mentioned.

Assuming to give the effect of the descriptive part of the mortgage, the bill claimed that the property was "all the south half of the southeast quarter of section nine, in township seven north, of range one west, Clinton county, Michigan, excepting lots six, ten, and eleven, in block eight, lots one, two, eight, fourteen, fifteen, sixteen and seventeen,

in block seven, and lots one and two, in block six, in the village of Shepardsville, Clinton county, Michigan; and also mill-lot number one, in block number three, with mills thereon, and lot number three, in block number two, with store thereon, in said village of Shepardsville, and being on the north half of southeast quarter of said section nine.''

The bill set up, among other things, that subsequent to the mortgage, and on March 5, 1872, there had been placed on record what purported to be a deed dated some twenty days earlier than the mortgage, namely, November 1, 1871, from the mortgagors to the sons, Alpheus and William S. Shepard, for all the south half of the southeast quarter of section nine, township seven north, range one west, excepting the part platted in the village of Shepardsville, the same being a part of the premises apparently mortgaged, and complainant alleged that he had no knowledge of this grant when he took the mortgage, and further, that it had not been delivered at that time.

The assignee in bankruptcy made no defense, but Mrs. Shepard and the sons, Alpheus and William S., answered.

They admitted the mortgage, but claimed that the property was not described in it as in the bill, and proceeded to give a verbatim copy of the description as follows, from the mortgage: '' South half of southeast quarter of section nine, township seven north, of range one west, excepting lots number six, ten and eleven, on block number eight; also lots sixteen and seventeen; also lots number one, two, fourteen, fifteen, and eight, on block number seven, and lots number one and ten, on block number six, including mill-lot number one, on block number three, with mills thereon; also lot number three, on block two, with store thereon, in the village of Shepardsville, being on north half of southeast quarter of said section nine.''

This description corresponds with that in the mortgage, and the apparent discrepancies between it and the claim in the bill are of no practical importance in the case. The suit is not brought to reform the mortgage or to obtain a

clearing up of ambiguities, and there are no materials for either. The plat is not in evidence, or any intelligible or proper description of it, and there is no proof touching its application to the tract. We cannot take judicial notice of the relative situation of lots and blocks on the map or plat, or as to how they apply to the ground. There is no question as to the identity of the mortgage, and if the bill is not accurate in its assumption of the effect of the mortgage description, it can do no harm to the defendants. Any order of sale would have to follow the description in the mortgage, and not one possibly different.

If either party wished a judicial settlement as to what precise parcels of ground the description attached to, in view of the terms used, a proper case therefor should have been made and followed by proper proof.

The answer further maintained, on the part of the defendants Alpheus and William S. Shepard, that the deed from the mortgagors to them and mentioned in the bill was duly delivered previous to the mortgage, and that complainant took the mortgage with actual knowledge that they had become owners of the land by virtue of such deed. And on the part of Mrs. Shepard, the answer alleged that when the mortgage was given by herself and husband she was absolute separate owner, by virtue of a conveyance to her from her husband on the 15th of February, 1871, of lots one, two, three, four, five, seven, eight, nine, thirteen, fourteen, fifteen, eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-four, twenty-five and twenty-six, in block number eight in the village of Shepardsville, according to the plat of said village, being a part of the south half of the southeast quarter of section number nine, in township number seven north, of range one west; and she made the deed from her husband part of her answer, and annexed it. On turning to the deed so made a part of the answer, the description, instead of placing the lots on part of the south half of the quarter, as in the body of the answer, places them on a part of the east half. This is perhaps not im-

portant, because the effect of the two statements would be to place the lots on the southeast quarter of the southeast quarter.

On the part of Mrs. Shepard the answer further stated, that she understood the complainant claimed that these lots were covered by the mortgage, and that if the mortgage did cover them, it was by the mistake of her husband in drawing up the instrument; that when she executed it she did not know what it contained, and did not intend to encumber her separate property; and that her husband "intended to exempt her said land from the description of land in the said mortgage;" and further, that complainant was at the time advised that she owned said lots.

It is noticeable that the answer on the part of Mrs. Shepard no where alleged that by its terms the mortgage covered the land she claimed. On the contrary, it seems to have been framed on the assumption that whether or not the mortgage by its terms did cover that land, was uncertain and a matter to be specially inquired into and determined.

The decree declared that so far as the same could be ascertained from the mortgage and bill of complaint, the property authorized to be sold was all of block seven in the village of Shepardsville, except lots one, two, eight, fourteen and fifteen, and all of block six in said village, except lots one and ten, and mill-lot one in block three, with the mills thereon, and lot three in block two, all in said village. It dismissed the bill as to the south half of the southeast quarter of section nine, not included in the village of Shepardsville, and also as to all lands in block eight in said village, with the declaration that the court found the lands last named were not included in the mortgage.

The attaching to the answer of what was said to be a copy of the deed to Mrs. Shepard from her husband only amplified the pleading. The deed was not thereby proved and made evidence in the case, and it is not found any where in the record as an exhibit. In one place such a

deed is referred to as offered in evidence and as marked exhibit C; but exhibit C represents a deed to Alpheus F. and William S. Shepard. And in another place a deed to Alpheus F. and William S. Shepard is indicated in the evidence as exhibit D, whereas there is no exhibit D. These defects are, however, not important in the view taken of the case.

It is too plain for discussion that the claim of Mrs. Shepard is not maintainable.

It is not pretended that the alleged conveyance from her husband to herself, and on which she grounds her entire right, had been placed on record at the time the mortgage was given; and there is no proof whatever in the case, that complainant had the least hint that she had any separate interest or any right as grantee.

Her husband deliberately drew the mortgage on the lots she claims and she joined in the execution. The complainant exercised no influence or control. According to the facts, he supposed, and had every reason to suppose, that the lots in question actually belonged to her husband, and that the mortgage was properly and rightly given upon them. He was not privy to any mistake, if any was made, and did nothing to lead to a mistake. He received the mortgage as Mr. Shepard drew it and as it was deliberately and freely executed.

As the case stands, the mortgage would have been good against her on these lots, except as to a possible dower claim in future, if she had not signed at all. Under the registry laws the complainant would have been protected as mortgagee in good faith in a mortgage made by the apparent owner. Waiving, however, this answer to her claim, there is no substance in the charge of mistake.

Untrammeled by any other contract, and without any thing to mislead, Mr. Shepard deliberately framed the mortgage and both freely executed and acknowledged it and passed it to complainant.

There is no pretense—there could be none—that Mr.

Shepard was not aware of the scope of his description. He knew full well what it included. The instrument was delivered as a mortgage of all unexcepted lots within the general description. In good faith complainant so received it, and he was entitled to believe the other parties designed it should so operate.

It is now claimed that it may be overthrown and annulled as to certain lots upon the oath of Mrs. Shepard that she did not know what the mortgage covered when she signed it, and that she held a secret purpose not to mortgage the lots in question, and upon the oath of her husband, in contradiction of his deliberate act, that he also had a secret design to exclude these lots, and this, too, in face of the fact that he actually excepted other lots about them. The bare statement is sufficient. The law requires very strong proof to support a real charge of mistake in a deed, and it has never gone so far as to convict a mortgage of embracing lands which ought not to have been put in, although in a condition to be so mortgaged and deliberately included by the mortgagor himself, on the naked ground that the mortgagor swears that he entertained a secret design to exclude such lands from the description.—*Benj. on Sales (Perkins ed.), § 55 and note I.* See also *Tripp v. Hasceig, 20 Mich., 254; Boyd v. McLean, 1 J. C. R., 590; Gillespie v. Moon, 2 J. C. R., 585; Garten v. Chandler, 2 Bibb, 246; United States v. Munroe, 5 Mason, 572; Bryce v. Ins. Co., 55 N. Y., 240; Marvin v. Bennett, 26 Wend., 169; Stockbridge Iron Co. v. Hudson Iron Co., 102 Mass., 45; S. C., 107 Mass., 290.*

The claim made by defendants Alpheus F. and William S. Shepard, and which their father seems to have been extremely active in promoting by his oath and in other ways, is a remarkable one.

The theory is, that the father, in order to carry out an agreement which he had made with his former wife, conveyed the particular land in question to these sons January 19, 1870; that in order to enable him to take care of a

mortgage he had made to Allan Shelden & Co. on these very lands whilst these sons were owners, and to take care of complainant's debt, the sons reconveyed to him October 26, 1871, by deed recorded two days thereafter; that three days after the record of this deed to him, and whilst its purpose was unaccomplished and during efforts to accomplish it, he gave back a deed to the sons, and which was withheld from record; that twenty days thereafter he designedly mortgaged the lands to complainant and hence devoted it to the purpose for which as claimed the sons had deeded it to him twenty-five days before; and yet that in so mortgaging to complainant he deliberately and expressly united with the latter in an attempt to commit a fraud on the sons by overreaching his unrecorded deed to them of November first.

The testimony is conflicting. Complainant swears positively that he knew nothing of the deed of November first to the sons, and contradicts the statements of his being privy to an understanding with his uncle that he would take the mortgage notwithstanding the unrecorded deed and give it precedence by recording it first.

His case is inconsistent with the theory of the defense, that William Shepard engaged with him to defraud William's sons. On the other hand, it is essential to the defense as made on this record, that we should credit William Shepard in his earnest endeavor, in which his sons in the most amicable spirit support him, to prove his complicity in a plot to defraud them in order to benefit complainant.

The whole question turns upon the view to be taken of the evidence, and it would not be profitable to dilate upon it. We have given the facts a careful examination, and have not failed to attend to the proper inferences and presumptions, and the effect made upon our minds is, that whether the deed bearing date November 1, 1871, was or was not in existence at the time of the mortgage, or if in existence, whether or not it had been delivered, the complainant had no notice of it, and took his mortgage upon the

faith that his uncle still held under the grant just made on October 26th and recorded the 28th. We also think that blind remarks may have been made touching the shifts of title, and that whatever may have been the design in making them, they were not such as to be understood by complainant, and were not understood by him as referring to a deed from the father back to the sons within three days from the putting on record of the deed made by them to him October 26th; and especially in view of the reasons given for that deed. The case shows there was opportunity for ambiguous and misleading hints to complainant, and certainly the complexion of the defense and of much of the testimony and circumstances connected with its development are not assuring against their employment.

We think complainant was entitled to the usual decree of foreclosure, and for a sale of the premises as described in the mortgage.

The decree should be reversed, and the cause remanded with directions accordingly.

Complainant should be allowed his costs in the court below and of this court.

The other Justices concurred.