(45 Misc. Rep. 120)

### DUKE v. STUART et al.

(Supreme Court, Special Term, New York County. October, 1904.)

1. CONTRACT—REFORMATION—MISTAKE.

In order to obtain reformation of a contract for mistake, it must be a mistake of both parties to the instrument, unless fraudulent conduct of defendant in causing the mistake is charged.

2. SAME—BURDEN OF PROOF.

In a suit to reform a contract for mistake, the burden is on plaintiff to establish it by a clear proof, and a mere preponderance of evidence is insufficient.

3. SAME—PRESUMPTIONS.

There is a strong presumption that a written instrument which has been carefully examined and deliberately signed states the intent of the parties.

Action by Nellie Duke against Inglis Stuart and others to reform a contract for the sale of realty. Judgment for defendants.

Harold Swain, for plaintiff.
W. P. & R. K. Prentice, for defendants.

¶ 1. See Reformation of Instruments, vol. 42, Cent. Dig. § 74.

GILDERSLEEVE, J.   The relief sought by the plaintiff is the reformation, on the ground of mutual mistake, of a contract for the sale of real property, by inserting a clause making its performance conditioned on the performance of another like contract between the plaintiff and other persons for the sale of premises on the same block as the land here in question.   The plaintiff also claims to recover $5,000 paid on account of the purchase money and $530· for the expense of examining title.   The contract in this suit relates to a parcel of land on the northwest corner of 157th street and Amsterdam avenue, in the city of New York, running to 158th street, and designated on the trial as parcel "No. 1."   Two other parcels on the same block, known in the case as "No. 2" and "No. 3," are the subject of the contract just referred to between the plaintiff and other persons.   On March 25, 1903, the plaintiff entered into two written agreements under seal for the purchase of all three parcels—one with the defendants, as executors of the will of William F. Buckley, deceased, for parcel No. 1; and the other with John D. Buckley and Charles R. Buckley for parcels No. 2 and No. 3.   Both contracts were, by their terms, to be performed at the same time and place, but by mutual agreement performance was extended as to parcel No. 1 until October 8, 1903.   The title to parcel No. 1 was in the defendants, as executors, and·the title to parcels No. 2 and No. 3 was in John D. Buckley and Charles R. Buckley in their individual right.   On July 6, 1903, the plaintiff declined to perform the contract as to parcel No. 2 on the ground that the vendors had no title thereto, but accepted a deed of parcel No. 3.   It appeared on the trial that the contracts in question were really made for the benefit of John Whalen, and that the purchase money was furnished by him.   On the part of the plaintiff the testimony was that early in the year 1903 Charles G. Moses, a broker, had an interview with the defendants, in which he proposed to sell the property for them, and he finally obtained an offer for the three parcels as one.   This was at first refused, but after negotiation, and on being increased to $297,000, it was accepted by the owners.   The offer of $297,000 was made up of separate valuations for each of the three parcels.   Defendants (executors) were present when the offer was originally made.   Moses would not deny that, in substance, on March 18th, both the Buckleys told him of the difference in title by which the several parcels were held, and that they would sell only for the price appraised by him (Moses) on Nos. 2 and 3, viz., $85,000 and $72,000, and that the executors must sell, if at all, by independent contracts.   Mr. Hamer testified that he never told Moses that an offer for the three plots as one only would be entertained. Nothing of that kind ever occurred.   John Whalen testified that Moses called on him, and said he represented the Buckley estate, the owners of these properties, and was authorized to offer them for sale.   He asked witness if he would buy them.   He said he might buy the Amsterdam avenue property, but Moses said the executors refused to sell the properties independently, and that they would have to be bought together.   Whalen told Moses to see the executors and tell them he had a purchaser for the Amsterdam avenue front, and that he (Whalen) would buy it.   Subsequently Moses told him he had seen the executors, and they had refused to sell the Amsterdam avenue front unless the

other two parcels were taken by the buyer. Witness then made an offer of $297,000 for all the properties. Moses reported its acceptance to him, and he turned the business over to Mr. Cleveland, secretary of the United States Title Guarantee & Indemnity Company. The witness had always been able, ready, and willing to supply money to plaintiff to take a title that was marketable. He first saw the contracts after the title to No. 3 was closed, July 6th, and then first knew that the three parcels were held by different titles. On the part of the defendants, Frank W. Hamer testified that in December, 1902, Charles Moses called on him, and said he would like a chance to sell some of the property. The witness told him he should have a chance when the executors were ready to sell. March 13th—a week after—Moses called with separate valuations on the property and said he had a party who wanted to buy three parcels in the block between Amsterdam avenue and Boulevard and 157th street to 158th street. They went to the office of Mr. Prentice, the executors' attorney, where it was discussed fully, and explained that the properties could not be bought as one piece; that under the will the Buckleys inherited the property on the Boulevard front, and that the executors could only give a deed to the Amsterdam avenue property. Mr. Prentice was to draw contracts which were to be submitted to the purchaser, and, if approved by him, accepted and signed. There were to be two contracts covering separate pieces of property. The Buckleys, Stuart, Moses Bros., witness, and the Prentices were again present in the office of Messrs. Prentice March 25th. The contract was signed and $5,000 paid on account. October 8th witness, Stuart, Buckleys, and Messrs. Moses were present, and Prentice tendered deed of Amsterdam avenue front property to Lindner, which was declined by him. The title company, for the purchaser, refused the deed on the ground of a cloud on the Boulevard front. Mr. Prentice denied this, and said he could offer insurance on the property. October 8th the executors, Prentice, and Lindner all said the contracts were to be separate and independent. Nothing was said at any of the interviews on the part of the executors or the Buckleys that the purchaser must take all or none. Charles R. Buckley, a defendant, testified that on March 18th Moses called on him; that Hamer, Stuart, and he were present. They told Moses they would entertain a proposition, as executors, of $140,000 for the Amsterdam avenue property, and that as individuals John R. Buckley and he would entertain a proposition of $72,000 and $85,000 on Nos. 2 and 3. October 8th Stuart, Hamer, the Buckleys, Lindner, and the Prentices met to close the title to the Amsterdam avenue property. Prentice tendered deed of the Amsterdam avenue properties No. 1 and of No. 2. Tender was refused, Lindner claiming that they bought all or none, and that title to No. 2 was bad. Prentice said the contracts were not interdependent. At no time during the negotiations and up to October 8th was anything ever said by the witness John D. Buckley or the executors to the effect that these contracts were conditional one on the other, and if the buyer took one he must take all. This witness never had an interview with Moses as to the manner in which the property should be sold, nor as to the order of selling the improved and unimproved portions. H. K. Prentice, attorney for defendants, testified that the contracts were

independent; that at his office, March 18th, Charles G. Moses said he had a tentative proposition for Nos. 1, 2, and 3. Charles R. Buckley spoke for the executors, and said they could not consider an offer in block; that the offers for the three pieces must be separate, mentioning the prices for the three parcels, which, as concerned Nos. 2 and 3, the Buckleys would be willing to consider, and a price for No. 1 which the executors would consider. The plaintiff's case for a reformation of the contract with the defendants rests wholly on the testimony of Mr. Moses, and that would be insufficient to sustain the action, even if it stood uncontradicted by the defendants. It does not lead the mind to a reasonable inference, much less a conviction, that the defendants, as executors, agreed to sell all these parcels of land as one parcel and by one contract, or that the sale of parcel No. 1 was to be conditioned on the sale of parcels Nos. 2 and 3. There is no suggestion in the evidence of any condition whatever making the sale of No. 1 dependent on the sale of the other parcels; the plaintiff merely seeks to have that condition inferred from the alleged fact that the sale was an entire one. Moses was merely the broker in procuring a sale of the property, and his functions ceased when he found a purchaser for it. He had no authority from either party to arrange the terms of the sale, and he could make no contract with either for the other. The principals themselves met at the office of the defendants' counsel in person or by attorney March 18th, for the first time, expressly to settle the terms of the sale, and have the contracts drawn. All the terms were then fully discussed, including the question raised in this action, deliberately and finally settled, and the written contracts, after being submitted to the plaintiff's counsel and examined and approved by him, were, on March 25th, executed by all the parties; and on July 6th the plaintiff took title under those contracts to parcel No. 3, and subsequently conveyed it to the City Real Estate Company. If any mistake arose between Moses and the defendant prior to March 18th, it was, or could have been, and ought to have been, corrected on that day, or be considered as waived. But it is very clear that from first to last no mistake which was mutual or common to both parties was made in connection with the transaction between them. The reformation of written instruments on the ground of mutual mistake is a familiar head of equity, and the principles which determine the granting or denial of relief in such cases are clear and well defined. The mistake which the court will rectify must be the mistake of both parties to the instrument, unless fraudulent conduct on the part of the defendant is charged, and none is charged here. Bryce v. Lorillard Fire Ins. Co., 55 N. Y. 240, 14 Am. Rep. 249; Paine v. Jones, 75 N. Y. 593. And it must be clear that the instrument does not express the intention of either party to it. Bryce v. Lorillard Fire Ins. Co., supra; Paine v. Jones, supra; Christopher St. R. Co. v. Twenty-Third St. R. Co., 149 N. Y. 51, 58, 43 N. E. 538. The proof of mistake must be clear, positive, and most convincing, and the burden is on the plaintiff to establish it. A mere preponderance of testimony is not enough. Ford v. Joyce, 78 N. Y. 618; Southard v. Curley, 134 N. Y. 148, 31 N. E. 330, 16 L. R. A. 561, 30 Am. St. Rep. 642; Christopher St. R. Co. v. Twenty-Third St. R. Co., supra; Simpkins v. Taylor, 81 Hun, 467, 31 N. Y. Supp. 169; Dougherty v.

Lion Fire Ins. Co., 41 Misc. Rep. 285, 84 N. Y. Supp. 10. In Weed
v. Whitehead, 1 App. Div. 192, 195, 37 N. Y. Supp. 178, it was said that
reformation is granted only on certainty of error. There is a strong
presumption that, where the parties to a written instrument have exam-
ined and deliberately signed it, as they did in this case, the instrument
is what it was intended by them to ·be. Moran v. McLarty, 75 N. Y.
25; Drachler v. Foote, 88 App. Div. 270–273, 84 N. Y. Supp. 977.

Touching the claim of the plaintiff to recover the sum of $5,000 paid
on account of the purchase price of parcel No. 1, and $530 for the ex-
pense of examining the title, I·cannot, consistently with the conclusion
I have reached on the plaintiff's right to a reformation of the contract
of sale, award judgment for the recovery of those sums.

Judgment for the defendants dismissing the complaint as to the plain-
tiff's cause of action for a reformation of the contract on the merits,
with costs, and dismissing the complaint as to the plaintiff's cause of
action for the recovery of judgment for $5,530, demanded in the action,
without prejudice to a new suit for its recovery.

Judgment accordingly.