## HOUSE v. WECHSLER.

(Supreme Court, Appellate Division, Second Department.   April 28, 1905.)

REFORMATION OF CONTRACT—MUTUAL MISTAKE.

The parties, who were partners, agreed to dissolve, to have an accounting of firm assets and liabilities, and to settle their interests as shown thereby.   On a statement being made, on the correctness of which defendant relied, it was agreed that plaintiff should pay him for his interest what the statement showed it amounted to, and this was done, and mutual releases were executed.   *Held*, that on its appearing that the bookkeeper of the firm, who had been intrusted by both parties with the duty of making up the statement, and who had been relied on by both to discharge that duty faithfully, had inadvertently enumerated an asset which did not exist, and had omitted a liability of which he was unaware, whereby defendant's interest was overstated, and he was paid more than the amount of his real interest, reformation of the contract should be granted on the ground of mutual mistake.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Reformation of Instruments, §§ 69–78.]

Woodward, J., dissenting.

Appeal from Special Term, Kings County.

Action by Everett House against Herman Wechsler.   From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

F. H. Van Vechten, for appellant.

Jesse S. Epstein, for respondent.

HIRSCHBERG, P. J.   The case seems to have been correctly decided.   The action is in equity, and has for its objects the reformation of a contract of copartnership settlement because of mutual mistake of fact, the recovery back of money paid in excess of the true amount by reason of the mistake, and the cancellation pro tanto of a general release given on such payment.   The parties to the action were copartners in business, but executed a written agreement in December, 1902, providing for a dissolution of the firm, and a disposition of the partnership assets.   In this agreement it was provided, in effect, that an accounting should be had of the assets and liabilities of the firm, and that a settlement should be had in accordance with the rights and interests of the parties as thereby disclosed. This agreement was followed by another one, executed the same month, which recited the fact that the plaintiff had rendered to the defendant a statement of the partnership business, whereby it appeared that the individual interest of the defendant amounted to the sum of $15,422.08, which statement the defendant had accepted, "relying upon the correctness" of the same, and by which agreement the plaintiff agreed to pay the defendant the sum named for his interest in the partnership property.   The plaintiff subsequently paid to the defendant the sum of $15,422.08 for the latter's interest in the firm business and assets, and mutual general releases were then executed and exchanged.   It was subsequently discovered, however, that the bookkeeper of the firm, who had been intrusted by both

parties with the duty of making up the statement of the condition of the firm for the purposes of the settlement, and who had been relied on by both parties to discharge that duty accurately, had inadvertently enumerated an asset which did not exist, and had also omitted an undoubted liability of which he was unaware, by reason of which errors the defendant's real interest in the firm property was $1,-235.23 less than the sum which appeared by the statement to represent it, and which excessive sum the defendant received from the plaintiff in cash on the adjustment. By the judgment appealed from, the plaintiff has been permitted to recover the excess in the sum so erroneously overpaid to the defendant, and the release has been set aside as a bar to such recovery.

The learned counsel for the appellant relies for a reversal on the case of Curtis v. Albee, 167 N. Y. 360, 60 N. E. 660. The principle of the decision in that case is that mere ignorance of a material fact is no sufficient ground for the reformation of a contract; but the general principle is recognized and reiterated that such reformation may be decreed where, through mutual mistake, the real agreement of the parties was not embodied in the papers. There a claim was sold at public auction for $6.50, the claim being described in the assignment as one for $2,036.54, whereas a few payments had then been made upon the claim by the debtor without the knowledge of either of the contracting parties, and the claim had been accordingly reduced in amount to a somewhat smaller sum than that by which it was described upon the sale. The court treated the description of the account in the assignment as a warranty that it amounted to the sum named, the falseness of which warranty was no ground for reformation. The purchaser meant to pay $6.50 for the account which he bought, and the account which he bought was the one which was sold. How much more or less he would have agreed to pay for it, had he known the true amount of the claim, could only be conjectured; and the court, in assuming to reform the contract, would be really making a new one. There was no element of fraud, and no mutual mistake which operated to produce a different result from that which the parties intended. Rescission might have been decreed in that case, but reformation was manifestly impossible. The court said (page 366 of 167 N. Y., page 662 of 60 N. E.):

"A claim for the smaller amount was not in the mind of either party, for neither supposed it to exist, and hence their minds could not have met on the transfer of such a claim. What the parties did not agree to cannot be added by the court. The defendant paid a small sum for a doubtful claim, large in amount, and ran the risk of losing what he paid for the chance of realizing a great profit. He is entitled to the contract in the form in which it was made, without interference by the court in the guise of reformation. The plaintiff got what he agreed to take, and assigned what he agreed to assign; and he has no more right to a reformation of the contract than he would have to strike out a warranty of soundness from a bill of sale of a horse because he and the purchaser both believed the horse to be sound, when in fact it was unsound. He sold the claim in question with a warranty that it was for a certain amount, and he cannot get rid of the warranty by 'reforming' it out of the contract upon the ground that he sold something he did not have, although he supposed he had it. This would ignore the rights of the defendant, and impose upon him a contract that he never made."

Here, however, the intention of the parties was that the plaintiff should buy and the defendant should sell the latter's interest in the firm at its face value, to be ascertained by an accurate inventory of the firm's assets and liabilities. The precise value was ascertainable by the mere process of calculation, and the parties were both mistaken in believing that the process had been correctly performed. A wrong sum was reached by them by adopting the bookkeeper's figures in making the agreement, but these figures were vitiated by the two errors referred to, which were errors as palpable and as correctible as though they were mere mistakes in mathematical computation. They operated, however, to produce a consideration for the agreement which neither party intended. The result was that the written agreement did not in fact embody the intention of the parties, but expressed a consideration which was larger than the plaintiff meant to pay or the defendant meant to charge. The minds of the parties met as to the essence of the amount to be paid, but both erred in determining how much it was. In other words, the error was solely in figuring. When such an error is finally discovered, a court of equity is not too impotent to make the correction which justice and fair dealing demand. The effect of the correction is to make the contract the very thing which both parties supposed it was when they made it, and not to impose anything upon either party which is different from his original design.

The release executed by the plaintiff is no bar to the maintenance of this action. Kirchner v. N. H. S. M. Co., 135 N. Y. 182, 31 N. E. 1104. The mutual mistake which justifies the reformation of the original contract will also avoid the release, which was given primarily only to attest the consummation of the contract; and, having been given under the influence of the same mistake, and before its discovery, it should not operate in equity as an estoppel to prevent the reformation of the principal agreement.

The plaintiff is not chargeable with laches in not discovering the mistake sooner.

The judgment should be affirmed, with costs. All concur, except WOODWARD, J., who dissents, and HOOKER, J., not voting.

WOODWARD, J. (dissenting). The plaintiff in this action contributed $10,000 in stock and good will to the firm of Everett House & Co.—the defendant contributing $8,000 in cash, under an agreement that the business should be conducted by said firm, and the profits and losses to be shared on the basis of 75 per cent. for the plaintiff and 25 per cent. for the defendant—and upon a dissolution of such partnership the assets, after the payment of the firm obligations, were to be distributed in proportion to the original investments. On the 17th day of December, 1902, for reasons mutually satisfactory, the parties entered into an agreement in writing for a dissolution of the copartnership; the defendant retiring from the firm as of that date. This agreement, mutual in its character, provides minutely for the closing up of the affairs of the copartnership, and for the payment to the defendant of the amount

which shall be found due to him; the covenant on the part of the plaintiff, in so far as it is material to the question presented upon this appeal, being as follows:

"That within on or before December 22, 1902, he will cause to be taken and delivered to said Herman Weschler a full, just and true inventory and statement of all stock, assets and liabilities of said copartnership of Everett House and Company, and does further covenant and agree that if the said Herman Weschler is dissatisfied with such inventory and statement of accounts that then and in that event the said Herman Weschler shall, without let or hindrance from the said Everett House or his legal representatives, have the right to have all the books of said copartnership examined and audited by an accountant of his own selection but at his own expense, and to that end and purpose, all books, memoranda and papers of every kind and nature shall be placed at the free disposal of such accountant, and the said Everett House does further covenant and agree to and with the said Herman Weschler that upon being advised by the said Herman Weschler that he, said Weschler, is satisfied with the accounting and with the amount of money which may be shown by said accounting to be due to the said Weschler that he will immediately transfer to the said Weschler merchandise or such debts as may be due and owing to the said copartnership of Everett House and Company aggregating in amount a sum equal to the amount which may be due and owing to the said Herman Weschler, and does expressly covenant and agree that he will not collect or receive any part or portion of such debts or bills receivable so to be transferred to said Weschler and that if any moneys be received on account of the same that such money shall be immediately transmitted and delivered to the said Herman Weschler."

It is entirely evident that the partner owning the controlling interest in the assets of the firm, and having a right to the major portion of the profits, and who presumably exercised a controlling influence in the management of the business of the firm, undertook to purchase the interest of his partner on the 17th day of December, 1902, the purchase price to be paid out of the retiring partner's interest in the assets of the firm; and these were to be determined by the results of an inventory and accounting under the direction of the plaintiff, who went into immediate possession of the business, subject to an election on the part of the defendant to accept such figures, or to conduct an independent investigation into the affairs of the copartnership at his own expense. The defendant was to be satisfied, not alone with the inventory, but with the "amount of money which may be shown by said accounting to be due to the said Weschler," and it appears from the evidence that the defendant elected to accept the figures which were submitted to him by the plaintiff under the terms of the agreement above quoted. Subsequently it appeared that by an error for which the defendant was in no wise liable, but which resulted from the carelessness or inadvertence of the plaintiff's bookkeeper, the statement of account resulted in an advantage to the defendant of about $1,235.23, and the plaintiff brings this action to reform the contract between the parties; taking from the defendant all of the advantages which he had under the elective clause of the contract, and making him responsible for the alleged error on the part of the plaintiff's own bookkeeper. The plaintiff has been given judgment for the sum above indicated, and the contract, notwithstanding the fact that the parties have mutually executed satisfaction pieces in the broadest possible terms, has been reformed so as to comport

with the plaintiff's view of the same.  The defendant appeals to this court.

Unless this court is going to assume to make a new contract for the parties, this judgment cannot be permitted to stand.  There was no mutual mistake on the part of the parties to this action.  It is not claimed that the contract does not express the exact agreement between the parties.  Indeed, the plaintiff testifies that at "the time I signed and executed the agreements which have been admitted in evidence, and the release which has been admitted in evidence, I intended to sign them in the form in which I executed them.  There was nothing taken therefrom or inserted therein, except what I understood at the time I signed the papers."  The plaintiff, taking possession of the business on the 17th day of December, 1902, contracted to afford an accounting of the affairs of the business as of that date, and to give the defendant an option of accepting the results of this accounting, or of instituting a new accounting at his own expense.  The plaintiff produced such an accounting, and there is no suggestion that the defendant did anything to influence the making up of this account.  He elected to accept the account stated by the plaintiff, and the transaction was closed upon that basis; each of the other partners executing a general release to the other.  There is no evidence that the defendant would have been satisfied with any other result than the one actually reached, and, if he was not satisfied with the figures, he was entitled to have a new inventory and accounting, which, so far as we are informed by the record, may have produced an entirely different result, and one more favorable to the defendant, notwithstanding the alleged error.  For this court to step in and say that the error of the plaintiff's bookkeeper, if there was one, is to be corrected at this time, taking from the defendant the right to a separate accounting, is to usurp a prerogative never voluntarily vested in the courts, and one which has no place in a system of jurisprudence which assumes to preserve inviolate the right of the individual to contract and to have his contracts enforced.  If the plaintiff's bookkeeper made a mistake of over $1,000 in a transaction of about $15,000, what right have we to assume that upon a new accounting, to which the defendant has a right under his contract, other errors of a more substantial nature may not be discovered?  The plaintiff undertook to give the defendant "a full, just, and true inventory and statement of all stock, assets, and liabilities"; and, as a guaranty of this, it was stipulated between the parties that, if the defendant was not satisfied, he should have the option of a new accounting at his own expense.  If the plaintiff, through his own bookkeeper, has made a mistake in favor of the defendant, and the defendant has, without any fraud or collusion on his part, accepted the account, he must be deemed to have accepted it as a whole, and the plaintiff cannot equitably be heard to say that he has a right to hold the defendant to all of the items of the account except such as he may point out as erroneous.  Either the defendant should be restored to his rights under the contract, giving him the privilege of

reviewing all of the affairs of the firm as they existed on the 13th day of December, or the transaction between the parties should be deemed to have been finally closed with the execution and delivery of the mutual satisfaction pieces appearing in the evidence; and, as the plaintiff makes no suggestion of a willingness to place the defendant in his original position under the contract, the judgment in this case violates the first principles of equity, and cannot stand. "The power of courts of equity to reform written instruments," say the court in Mead v. Westchester Fire Ins. Co., 64 N. Y. 453, 455, "is one in the exercise of which great caution should be observed. To justify the court in changing the language of the instrument sought to be reformed, except in case of fraud, it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be so clear and convincing as to leave no room for doubt. Losing sight of these cardinal principles in the administration of this peculiar remedy would lead to the assumption of a power which no court possesses—of making an agreement between the parties to which they have not both assented."

The contract of December 17, 1902, was supplemented by a contract under date of December 22, 1902, which recited:

"Whereas, In pursuance of such agreement the said Everett House has rendered a statement of the said partnership business, whereby it appears that the individual interest of the said Wechsler, in the said partnership assets (excepting uncollectible accounts) after deducting from the said assets a sum sufficient to pay all the liabilities amounted on December 20th, 1902, to the sum of $15,422.08, and * * * Whereas, the said Wechsler, relying upon the correctness of the said statement, has accepted the same as a true and correct statement of the condition of the partnership as the same existed on December 20th, 1902," etc.

Would the defendant have been satisfied to accept this statement of the affairs of the firm if it had been in accord with the plaintiff's present contention? Would the defendant be entitled to a reformation of the contract if the error had been found in his favor? As to the first inquiry, the record is silent. In regard to the second, I am of opinion that the defendant, having elected to accept the figures, would be estopped to say that he had been misled, for it was easily within his power, under the provisions of the contract, to ascertain the facts. "The mistake which will warrant a court of equity to reform a contract in writing must be one made by both parties to the agreement, so that the intentions of neither are expressed in it, or it must be the mistake of one party, by which his intentions have failed of correct expression; and there must be fraud in the other party in taking advantage of that mistake, and obtaining a contract with the knowledge that the one dealing with him is in error in regard to what are its terms." Bryce v. Lorillard Fire Ins. Co., 55 N. Y. 240, 242, 14 Am. Rep. 249; Curtis v. Albee, 167 N. Y. 360, 364, 60 N. E. 660, and authorities there cited, fully explaining the rule. In the case at bar, in the contract of December 22, 1902, supplemental to that of December 17, 1902, the amount found by the plaintiff to be due the defendant

is stated; and the defendant elected to accept the figures, and there is no suggestion that the defendant knew that there had been a mistake. There was therefore no fraud, and, as the contract expressed the intention of the defendant and the then intention of the plaintiff, it is difficult to bring this case within any rule for the reformation of written contracts. Where the parties have reduced their contract to writing, there is a strong presumption that it expresses the intention of the parties (Duke v. Stuart, 45 Misc. Rep. 120, 125, 91 N. Y. Supp. 885, and authorities there cited), and the proof of mistake must be clear, positive, and most convincing, and the burden is on the plaintiff to establish it (Southard v. Curley, 134 N. Y. 148, 151–153, 31 N. E. 330, 16 L. R. A. 561, 30 Am. St. Rep. 642, and authorities reviewed).

The judgment appealed from should be reversed, with costs.