EDWARD C. JAMES, Respondent, *v.* JAMES HENRY WORK,
Appellant.

*" Grant & Ward contracts"—false representations—smallness of verdict—evidence
of prior transactions—measure of damages—agency—scope of an agreement of
release—pendency of another action—laches, Statute of Limitations in case of
fraud.*

On appeal by a defendant from a judgment entered upon a verdict rendered
against him and from an order denying his motion for a new trial, in an action
brought to recover the damages alleged to have been suffered by the plaintiff
from the fraud and deceit of the defendant in procuring from the plaintiff, by
false representations, certain sums of money between February 15 and May 6,
1884, for investment in "Grant & Ward contracts," and so invested, one of the
objections urged by the appellant against the verdict was its smallness, and he
insisted that for that reason a new trial should be granted. No motion in the
court below was made upon this ground, the only motion for a new trial,
because of the amount of the verdict, having been made upon the ground that
the verdict was excessive.

*Held,* that no motion based upon the insufficiency of the verdict having been
made in the court below, the General Term could not consider the question
as to the amount of the verdict, except, perhaps, so far as it might be per-
tinent upon the question as to whether the jury were misled by anything that
occurred upon the trial or that such verdict was against the weight of evidence,
and the defendant had been injured thereby.

The appellant insisted that the trial court erred in permitting evidence as to
transactions between the parties prior to the date mentioned in the complaint
and which did not constitute any part of the cause of action therein alleged.

*Held,* that no error was committed in that regard, because the plaintiff had a
right to show the relations which existed between the parties induced by pre-
vious transactions and previous acquaintance, which would illustrate and give
color to the transactions which formed the subject-matter of the action and be
merely introductory thereto.

In a portion of the charge to the jury which was not excepted to, the court laid
down as the measure of damages, that if the plaintiff had a cause of action and
the plaintiff's money was advanced and lost through the fraud and deceit of the
defendant, a recovery could be had for the whole amount so advanced (less
what had been paid back by the defendant to the plaintiff), and then, on the
suggestion of the defendant's counsel, added the words, "or any amount less."

*Held,* that the original proposition enunciated by the court was the true measure
of damages; and that, because the jury found for a less amount, it did not lie
in the defendant's mouth to allege that fact as a reason for setting aside the
verdict.

The complaint claimed to recover specific sums of money obtained from the
plaintiff by the defendant through false representations. The defendant

insisted that the cause of action mentioned in the complaint was not proven, because at the dates mentioned in the complaint no money passed from the plaintiff to the defendant, and that between the dates mentioned in the complaint the plaintiff had withdrawn more from the enterprise than he put in.

*Held*, that if the defendant collected money belonging to the plaintiff as his agent and reinvested the same, having procured the plaintiff's consent to such reinvestment by fraud and deceit, the allegations of the complaint were proven, although in fact the plaintiff did not actually give the sums mentioned in the complaint to the defendant.

Nearly three years after the advance and investment of the moneys in suit and the failure of Grant & Ward, the following memorandum of agreement was made between the plaintiff (E. C. James) and the defendant (J. H. Work):

"NEW YORK, *March* 3, 1887.

"Memorandum of understanding and agreement between E. C. James and J. H. Work. E. C. James is to assign, at any time, on demand, or hold subject to order of J. H. Work, as to collection, release or other disposal thereof, all his claims upon obligations of Grant & Ward, or for moneys paid therefor, and all claims arising out of his dealings with said firm, and all the members thereof, as against said firm and the individuals thereof, and all other persons and bodies corporate, this transfer being intended to be of the most comprehensive character, and to be evidenced and effectuated by all such instruments in writing as may be necessary. J. H. Work is to provide the moneys to pay and take up the obligations of E. C. James held by Thos. M. Rainhard as the same mature, to wit, the sum of twenty-five thousand dollars ($25,000) and interest. Said J. H. Work will also pay, or cause to be paid, to said James the sum of five thousand dollars cash ($5,000) on or before September 1, 1887.

'E. C. J.

"J. H. WORK.

"$10,000. Received this third day of March, 1887, the sum of ten thousand dollars ($10,000) on account of above memorandum.

"EDWARD C. JAMES."

Under this agreement the defendant paid the $30,000 therein provided for. At the close of the testimony the defendant asked the court to dismiss the complaint upon the ground that any claim which the plaintiff might have had against the defendant was released by this instrument, which request was denied.

*Held*, that the paper would, by its terms, include the claim sought to be enforced in the action, but that this effect was avoided, upon the ground of mutual mistake, by the finding of the jury, upon evidence submitted without objection, tending to show that it was not the intention of the parties that the instrument should include the claims in suit. (INGRAHAM, J., dissenting.)

It was suggested upon the argument that the plaintiff could not be relieved from the terms of the release without having previously offered to return the $30,000 which he had received thereunder.

*Held*, that this point could not avail at the present time, even if well taken (which it probably was not), as it was first suggested upon the appeal.

It appeared that the action in suit and another brought by the same plaintiff against the same defendant, for an accounting for the money and profits received by the defendant as the agent of the plaintiff, were commenced about the same time, but it was uncertain which was commenced first. The appellant claimed that the plaintiff had lost the right of bringing the action in suit by his election to prosecute a different and inconsistent remedy, but the pendency of the other action was not set up in the answer.

*Held*, that the question which action was commenced first seemed immaterial, since if the defendant desired to avail himself of the defense of another action pending, which involved or was inconsistent with the maintenance of the action in suit it was necessary that it should be pleaded.

The court refused the defendant's request to charge, that if the jury found that prior to the bringing of the action in suit the plaintiff had knowledge of the facts upon which the alleged fraud was predicated, and having such knowledge did not promptly bring the action, they should find for the defendant.

*Held*, that there was no error in this refusal, because the Statute of Limitations determines the question as to how promptly after the discovery of the fraud an action must be brought.

APPEAL by the defendant, James Henry Work, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 15th day of April, 1892, upon a verdict rendered at the New York Circuit, and from an order denying the defendant's motion for a new trial, made upon the minutes.

*John E. Parsons*, for the appellant.

*Joseph H. Choate*, for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover damages alleged to have been suffered by the plaintiff from the fraud and deceit of the defendant.

The complaint alleges that in the years 1883 and 1884 the firm of Grant & Ward were doing business as bankers and brokers at No. 2 Wall street in the city of New York, and that between the 15th of February, 1884, and the 6th of May, 1884, the defendant procured from the plaintiff the sum of about $207,800, upon certain dates and in certain amounts, in said complaint particularly specified "by falsely and fraudulently representing to plaintiff as matters of fact known to defendant, that the said firm of Grant & Ward were very

wealthy, and that each of the members thereof was very wealthy, and that said firm had certain very valuable and profitable contracts with responsible third parties upon which large sums of money were to become due and payable to said firm from time to time during the year 1884, the performance and payment of which said contracts the said firm guaranteed to investors therein, and that said firm had, at defendant's request, taken an interest in said contracts, for or on behalf of this plaintiff, upon which there would become due and payable about eight per cent upon the cost thereof, as profits, every thirty days during the time said contracts were to run, respectively, together with the sums invested, at the maturity of said contracts, and that, as matter of fact, said guaranty made the investment perfectly safe, because of the wealth and responsibility of said firm, which were well known to defendant, and that defendant wanted the sums above stated, at or about the times above stated, to pay to said firm for plaintiff for the interests in said contracts, which had been taken by said firm for plaintiff at defendant's request, as aforesaid."

The complaint then further alleges that the plaintiff did not then know that said statements or representations, or any of them, were false, but that he believed each and every one to be true, and relying thereon, was induced thereby to forbear further inquiries, and to let the defendant have the sums above set forth; that said firm of Grant & Ward failed on the 6th of May, 1884, insolvent, and that each member thereof was likewise insolvent; that said statements and representations were false and fraudulent at the time they were made and were known by the defendant to be false and fraudulent when made, and that as plaintiff had been informed since the failure of said firm and verily believed, at the time said statements and representations were made by defendant to plaintiff, the said firm and each member thereof were insolvent; that they did not have any contracts, and did not guarantee the performance or payment of any actually existing contracts, but that said alleged contracts were wholly fictitious.

And the complaint further alleged: " That on the 3d day of March, 1887, the plaintiff agreed to assign to the defendant all his claims against the firm of Grant & Ward, and their assignee and receiver, and against the individual members of said firm and other

persons representing them, for the sum of $30,000, which sum said defendant paid to plaintiff between the 3d day of March and the 5th day of September, 1887, and subsequently on the 21st day of May, 1888, on defendant's demand, and in performance of said agreement, this plaintiff executed and delivered to said defendant an assignment in blank of said claims, and, since the failure of said firm, nothing has been received by this plaintiff on account of the moneys obtained by defendant from plaintiff as aforesaid, except said sum of $30,000."

The defendant answering, denied the representations, admitted the failure of Grant & Ward, and that in March, April and May, 1884, they were insolvent, and that they did not have any of the alleged contracts described in the complaint. The answer further admitted : "That on or about the 3d day of March, 1887, the plaintiff agreed to assign his claims against the firm of Grant & Ward and their assignee and receiver, and against the individual members of said firm *and other persons,* and that this defendant paid, or caused to be paid, to the said plaintiff the sum of thirty thousand dollars," but denied the agreement set out in the complaint, or that said sum of $30,000 paid by the defendant was paid for the consideration set out in the complaint. It admitted the execution by the plaintiff of an assignment in blank of certain claims of the plaintiff, as alleged in the complaint, but denied that said agreement was performed by the execution of said assignment, and denied that the sum of $30,000 was paid to or received by the plaintiff on account of any money received by the defendant from the plaintiff, as alleged in the complaint or otherwise.

And for a second and complete defense to said complaint, defendant alleged that on the "3d day of March, 1887, the plaintiff herein entered into an agreement in writing with the defendant whereby, in consideration of the sum of thirty thousand dollars, agreed to be paid by this defendant as therein set forth, the plaintiff agreed with this defendant to finally adjust, settle, release and transfer all the plaintiff's claims of every nature and character arising out of or connected with the several transactions of the firm of Grant & Ward, including all transactions had with this defendant and all other persons whomsoever in any manner connected therewith ; that the said consideration of thirty thousand dollars agreed to be paid

by this defendant, was thereafter fully paid by him and received by the plaintiff."

The plaintiff having given evidence tending to support his complaint, and the defendant being heard in respect to the defenses set up in his answer, the case was submitted to the jury, and they rendered a verdict in favor of the plaintiff for $63,350, and a motion having been made for a new trial from the judgment thereupon entered, and from the order denying such motion for a new trial, this appeal is taken.

In the disposition of the questions which have been raised upon this appeal it will not be necessary to rehearse in detail the evidence in respect to the extraordinary speculation, which the case discloses the parties in this action to have been engaged in — the promise of profits fabulous in amount and manifestly excessively beyond those which might be expected from business transactions, being apparently accepted by the plaintiff without the slightest investigation or question. With this feature of the case, however, this court perhaps has nothing to do in view of the fact that the jury seems to have been satisfied of the gullibility of the plaintiff, and they were the judges of that fact.

One of the points which seems to be urged against this verdict upon the part of the appellant is its smallness, and that, therefore, a new trial should be granted. But it seems to be a sufficient answer to this argument to say that no motion in the court below was made upon this ground, and that the only motion for a new trial because of the amount of the verdict was upon the ground that the verdict was excessive and not that it was insufficient. No such motion having been made in the court below, this court cannot consider the question as to the amount of the verdict, except, perhaps, so far as it may be pertinent upon the question as to whether the jury were misled by anything that occurred upon the trial or that such verdict was against the weight of evidence, and the defendant has been injured thereby.

It is insisted upon the part of the appellant that the court erred in permitting evidence as to transactions prior to the date mentioned in the complaint, and which do not constitute any part of the cause of action therein alleged. But we do not think any error was committed upon this branch of the case, because the plaintiff had a

right to show the relations which existed between the parties induced by previous transactions and previous acquaintances which would illustrate and give color to the transactions which formed the subject-matter of the action and be merely introductory thereto.

Another point made by the appellant, which is urged with considerable force, is that under the charge of the judge who presided at the trial, the jury were permitted to find a verdict for a cause of action distinct from and entirely unlike that which was alleged in the complaint, and the ground upon which the argument in support of this point is based is that the complaint claimed to recover specific sums of money obtained from the plaintiff by the defendant by fraudulent representation, and that in fact, between the dates mentioned in the complaint, the plaintiff had withdrawn from these brilliant enterprises more than he put in. The court charged in respect to the question of damages, that the real measure of damages would be what detriment in money the plaintiff suffered by not withdrawing his money on the 4th of March, 1884, or afterwards. This was an erroneous measure of damages upon the theory upon which the complaint was framed, but it was not excepted to, and the attention of the court was not called to the point. But afterwards the court did charge that if on the evidence the plaintiff was entitled to recover it would be for the sum of $207,800, less $30,000, which was paid by Mr. Work, unless they found that the $30,000 was a complete accord and satisfaction and discharge. And subsequently, upon the attention of the court being called to this portion of the charge by the counsel for the plaintiff, that it being unliquidated damages the jury might find damages not exceeding $207,800 with the $30,000 deducted, it was suggested to the court by the counsel for the defendant that they could find for any amount less, and the court then charged, " That is right; they cannot exceed that; that is what I meant. It cannot exceed $177,800."

In this portion of the charge, which was not excepted to, the court laid down the true measure of damages, that if the plaintiff had a cause of action and this money was advanced and lost through the fraud and deceit of the defendant, a recovery could be had for the whole amount, and on the suggestion of the counsel for the defendant the words " or any amount less," were added to the propo-

sition. Now, because the jury have found for a less amount, it does not seem to us that it lies in the mouth of the defendant to claim that as a reason for setting aside the verdict.

The other branch of this proposition it is now necessary to discuss very briefly. It is claimed that the cause of action mentioned in the complaint was not proven, because at the dates mentioned in the complaint no money passed from the plaintiff to the defendant. And it must be conceded in the discussion of this proposition that no money actually did pass from the plaintiff to the defendant. But if the defendant collected money belonging to the plaintiff as his agent and then reinvested the same, having procured the plaintiff's consent to such reinvestment by fraud and deceit, the allegations of the complaint are proven, although in fact the plaintiff did not actually give the sums mentioned in the complaint to the defendant. The possession of the plaintiff's money by the defendant, the defendant being his agent, was the possession of the plaintiff, and when the plaintiff authorized the defendant to reinvest these moneys, it was the reinvestment of the plaintiff's moneys, by the defendant precisely the same in legal effect as though the plaintiff had taken the money out of his own pocket and handed it over to the defendant at the time the reinvestments were authorized. It appeared from the evidence that there were $43,200 falling due on the 1st of March, 1884, from Grant & Ward to the plaintiff. The plaintiff consented to the reinvestment of $40,000, but stated that he wanted $3,200, and on the 1st of March, 1883, the defendant writes to the plaintiff in the following language :

"I have this day handed you check for $3,200, and now I have to report the investment of the remaining $40,000 *collected for you this day*, in pursuance of your directions in a contract running for a little over six months," etc. In this letter of Work was a distinct statement that he had collected this money on behalf of the plaintiff and had reinvested it pursuant to his instructions, such instructions being induced by the false and fraudulent representations of the defendant. Can the defendant, when he is called upon to answer in an action brought upon the faith of his assertion of having collected this money, be heard to say that he had never received it, but had merely, as it were, turned over the investment, when it appears from the evidence that he and his associate Warner had during this

very period drawn upon their own account from said firm of Grant & Ward large sums of money? The same evidence was given in respect to the amounts claimed to have been advanced on the twenty-seventh of March. In respect to the amount advanced on the thirty-first of March no letter passed between the parties, but the conversation was to the same effect — that Work had collected the amount due and reinvested the same; and this seems to have been the course of business in respect to the other amounts to recover which this action is brought.

Upon cross-examination the defendant testified as to what he meant by reinvestment. He says he did not mean to say that any cash or check passed, or that anything was done, except to surrender the old vouchers and take new vouchers in their place. At the maturity of that contract a new contract was made, and new vouchers were given. But it appears from the evidence and also from Work's letters that he wrote to the plaintiff, that he had collected these amounts and reinvested them. Under such a condition of affairs. can it for a moment be claimed that the plaintiff can be thrown out of court in an action against his agent for damages for fraud and deceit, in inducing him to invest moneys belonging to himself in the agent's hands by proof that the agent had falsely represented to the principal that he had collected moneys due him, but in violation of his duty, instead of collecting the money and reinvesting it, he had surrendered the vouchers of his principal, and received in return others?

We think the mere statement of this proposition shows that it could not obtain in any court of justice. If the defendant chose to surrender these vouchers without receiving payment therefor, and received the evidence of the investment of their proceeds, as far as the plaintiff was concerned it was precisely the same as though he had reinvested the plaintiff's money as he alleged he had done. Therefore, the technical' point that the proof did not support the cause of action alleged in the complaint, cannot be sustained. And there is no difference simply because fraud is charged, and the courts have adhered to the doctrine that the proof must follow the allegation where that is the case. Nor is the claim well founded that the proof, if there was any, was that the plaintiff was damaged by not withdrawing money from Grant & Ward because of misrep-

resentation by the defendant. There was no such proof. The proof was that the money was to be collected by Work, and that he represented that he had collected it and reinvested it pursuant to the instructions of the plaintiff; not that the plaintiff was induced not to withdraw his money from Grant & Ward because of misrepresentations by the defendant. As far as the maintenance of this action was concerned the admissions of the defendant that he had collected this money were sufficient to sustain the verdict that he had withdrawn and reinvested it.

This view of the case disposes of another point urged upon this appeal, that there was really no evidence to justify the jury in finding that the plaintiff could, subsequent to his February, 1884, conversation with the defendant, have withdrawn from Grant & Ward either the $63,350 for which the jury have given a verdict, or any other amount. It is true there is an expression in the charge of the court that the real measure of damages in this case would be what detriment the plaintiff has suffered by not withdrawing his money. But the court did not finally submit any such rule of damages to the jury, because, without exception, he finally submits that if the plaintiff was entitled to recover it would be for the sum of $207,800, less $30,000 paid by Work, and this was subsequently qualified at the request of both counsel, by allowing the jury to find that sum or any less amount. If the court had intended to lay down the rule of damages claimed, he could not have charged as he did that the plaintiff was entitled to recover the sum of $207,800, and then also refuse to charge that in considering the question of damages the jury must consider that the firm of Grant & Ward was alleged to have been insolvent at the time. From this action upon the part of the court, it is clear that this was a mere inadvertence to which the attention of the court was not called by exception or otherwise, and that he intended to charge the jury as the measure of damages that the plaintiff was entitled to recover the sums which Work had received and invested.

A more serious question than any which has heretofore been presented seems to me to arise upon the memorandum of agreement made between the plaintiff and the defendant on the 3d of March, 1887, and which is as follows :

" NEW YORK, *March* 3, 1887.

" Memorandum of understanding and agreement between E. C. James and J. H. Work. E. C. James is to assign at any time, on demand, or hold subject to order of J. H. Work, as to collection, release or other disposal thereof, all his claims upon obligations of Grant & Ward, or for moneys paid therefor, and all claims arising out of his dealings with said firm, and all the members thereof, as against said firm and the individuals thereof, and all other persons and bodies corporate, this transfer being intended to be of the most comprehensive character, and to be evidenced and effectuated by all such instruments in writing as may be necessary.

" J. H. Work is to provide the moneys to pay and take up the obligations of E. C. James held by Thos. M. Rainhard as the same mature, to wit, the sum of twenty-five thousand dollars ($25,000) and interest. Said J. H. Work will also pay, or cause to be paid, to said James, the sum of five thousand dollars (cash) ($5,000) on or before September 1, 1887.

"E. C. J.

" J. H. WORK.

" $10,000. Received this third day of March, 1887, the sum of ten thousand dollars ($10,000) on account of above memorandum.

" EDWARD C. JAMES."

Under this agreement the defendant paid the $30,000 therein provided for, and the court was asked at the termination of the evidence to dismiss the complaint upon the ground that any claim which the plaintiff might have had against the defendant was released by this instrument. This request was denied, and properly so if there was evidence in the case tending to show that such release, even though upon its face it might include the claim of the plaintiff in this action, had been obtained by the defendant from the plaintiff under a mutual mistake as to its scope or by fraud. The defendant contended that this release did include by its terms the claim of the plaintiff. The plaintiff, upon the other hand, contended that it did not upon its face include the claim sought to be enforced in this action, and that it was not the understanding that such a claim was included, and furthermore, that there was a fraudulent concealment of facts by which its execution by the plaintiff was induced.

Upon a consideration of this paper we are of opinion that it would by its terms include the claim sought to be enforced in this action, and that, therefore, it was necessary for the plaintiff in order to avoid its effect, to dispose of such release upon the ground of mutual mistake or fraud. Now, no question of fraud was submitted to the jury. But the court did submit the question as to this release to the jury, and they were instructed that it was a matter of fact for the jury to determine what was the intent and purpose with which that instrument was given. The court said : " If you find on the whole testimony that, when these parties came together before March 3d, they intended that there should be an entire relinquishment of any claim which Colonel James might, by any possibility, have against Mr. Work, that is the end of this controversy ; and that stands as the first defense which you are to consider. Now, gentlemen of the jury, was that so ? I charge you, as a matter of law, that upon the construction to be given to that instrument, I cannot say that that was a complete discharge and release to Mr. Work. Under the testimony which has been given by both parties it is for you to say whether, when they came together to talk with reference to what should be done or given for the payment of the $30,000, it was really intended by Colonel James to do anything more than simply to assign what claims he might have against Grant & Ward, in order that he might put them into the hands of Mr. Work that he could aggregate and get together all those claims, and get out of them what he could for the benefit of himself or other parties in interest. I leave that to you upon all the testimony, without recounting it or referring to it further, as to whether or not there was such an arrangement and such an agreement made, outside of the terms of the written contract — whether there should be a discharge and satisfaction of those claims."

It is undoubtedly true that it was error to charge the jury as to what the plaintiff intended. But there was no exception to such charge and it was the clear intent of the court to submit to the jury the question whether the parties intended to include any claims which the plaintiff might have against the defendant, and that question having been submitted to the jury without objection or exception, it presented one branch of the case at least, upon the establishment of which the plaintiff might be relieved from the

effect of the release. And, at the request of the defendant, the court charged in explicit language that "if at the time the agreement of March 3, 1887, was executed, any difference existed between the parties which was intended to be embraced in it, your verdict must be for the defendant, even if at the time the alleged fraud was not known to the plaintiff." This was certainly as favorable to the defendant upon this point of mutual mistake as the defendant could have asked. And the evidence that this release was not intended to embrace any such claim as was presented in this action is somewhat strong. The defendant expressly denies that the $30,000 paid to the plaintiff upon that release was paid to or received by him on account of any moneys obtained from the plaintiff by the defendant as alleged in the complaint or otherwise. And furthermore, we find that as late as the 10th of May, 1888, the defendant sends to the plaintiff assignments in duplicate to be executed in blank in pursuance of the agreement of March, 1887. And what is assigned by these papers? All the plaintiff's claims against the firm of Grant & Ward and the individual members thereof upon obligations of the firm, and also the obligations aforesaid, and also all claims against the firm and the members thereof for moneys paid for said obligations, and also all the interests and rights of the plaintiff under the assignment of the firm.

Therefore, if it should be claimed that there was no evidence to support the finding of the jury, it appears from the evidence to which attention has been called that it might well be argued that the agreement of March, 1887, did not contemplate the transfer or release of any claim such as that presented in this action.

In connection with this claim it was suggested upon the argument that the plaintiff could not be relieved from the terms of the release without having previously offered to return the $30,000 which he had received thereunder. But this point cannot avail at the present time, even if well taken (which it probably is not), as it is first suggested upon this appeal.

It appears that two actions have been instituted against the defendant Work by summons served on the 11th and 12th of February, 1890, and subsequently complaints were served, one in this action, and another in an action for an accounting for the money and profits received by the defendant as the agent of the plaintiff.

It is now claimed that the plaintiff has lost the right of bringing this action by his election to prosecute a different and inconsistent remedy, and considerable stress has been laid upon the point as to which action was commenced first. It is impossible to tell from the summons, because they bear no earmarks which would show as to which action the summons first served was intended to institute. It is urged that the summons served on the eleventh was intended to be the action for an accounting because of a conversation had by the plaintiff with the defendant. But we are not aware of any rule by which a conversation can determine the nature of an action. It is the complaint served which determines the nature of such action and that only. But whether this be so or not, and whether it was intended to begin the equity action by the summons which was first served, under the pleadings in this case, seems to be immaterial. If the defendant desired to avail himself of the defense of another action pending which involved or was inconsistent with the maintenance of the action in suit it was necessary that it should be pleaded. A claim in abatement must always be pleaded and the answer contains no allegations of the sort.

Error is also claimed because of the refusal of the court to charge that if the jury found that prior to the bringing of the action the plaintiff had knowledge of the facts upon which the alleged fraud was predicated, and having such knowledge did not promptly bring this action, they should find for the defendant. There does not seem to be any error in this refusal, because the Statute of Limitations determines the question as to how promptly after the discovery of the fraud an action must be brought.

It would seem, therefore, upon an examination of the whole case that no error was committed during the progress of the trial to the prejudice of the defendant, and that the judgment and order should be affirmed, with costs.

O'BRIEN, J., concurred.

INGRAHAM, J. (dissenting):

I concur with the presiding justice in his opinion except as to the effect of the release or agreement of March 3, 1887.

The action was brought to recover the damages sustained by plaintiff in consequence of his investment of certain sums of money,

specified in the complaint, with Grant & Ward, which investments were induced by false and fraudulent representations made by the defendant. These investments with Grant & Ward are alleged in the complaint to have been made between March 1 and May 5, 1884, and Grant & Ward failed on May 6, 1884.

The particular representations made by defendant upon which plaintiff bases his cause of action, are that the firm of Grant & Ward were very wealthy; that each of the members thereof was very wealthy; that said firm had certain very valuable and profitable contracts with responsible third parties upon which large sums of money were to become due and payable to said firm from time to time during the year 1884, the performance and payment of which said contracts the said firm guaranteed to investors therein, and that said firm had, at defendant's request, taken an interest in said contracts for and on behalf of this plaintiff, upon which there would become due and payable about eight per cent of the cost thereof as profits every thirty days during the time the said contracts were to run, respectively, together with the sums invested at the maturity of the said contracts, and that, as matter of fact, said guaranty made the investment perfectly safe because of the wealth and responsibility of the said firm, which were well known to defendant, and that defendant wanted the sums before stated, at or about the times above stated, to pay to the said firm for plaintiff for an interest in said contract which had been taken by said firm for plaintiff at the defendant's request as aforesaid.

Whatever cause of action plaintiff had against Work existed at the time of the execution of the March third agreement, and, so far as appears, the only fact that he subsequently discovered was that Work had received from Grant & Ward sums in excess of those he had accounted for to plaintiff upon former contracts between plaintiff and Grant & Ward, but I do not see how these facts had any relation to the liability of the defendant to plaintiff for the investments made in March, April and May, 1884.

The main facts represented by defendant to exist were the wealth of the firm of Grant & Ward, the existence of the contracts, and that his moneys were invested therein. The failure of Grant & Ward showed conclusively that the representations as to their wealth were untrue, and plaintiff says that in 1885 he discovered that no

contracts could be found, but that at that time Work told him he believed that they would be found, but they never were found.

Long before the 3d of March, 1887, Ward had been convicted and sent to the State prison, and a judgment had been entered against Warner for about $1,200,000 for money that he had received from Grant & Ward prior to their failure, and plaintiff states that he had seen statements in the newspapers that Work and Warner had received large profits upon the investments which they had made with Grant & Ward, but that Work had contradicted those statements.

From this testimony, it would appear to be clear that plaintiff had knowledge of the falsity of the representations upon which he now bases his cause of action, prior to the 3d of March, 1887, when the agreement now under consideration was executed.

This agreement is as follows:

"NEW YORK, *March* 3, 1887.

"Memorandum of understanding and agreement between E. C. James and J. H. Work: E. C. James is to assign at any time, on demand, or hold subject to order of J. H. Work, as to collection, release or other disposal thereof, all his claims upon obligations of Grant & Ward, or for moneys paid therefor, and all claims arising out of his dealings with said firm, and all the members thereof, as against said firm and the individuals thereof, and all other persons and bodies corporate, this transfer being intended to be of the most comprehensive character, and to be evidenced and effectuated by all such instruments in writing as may be necessary.

"J. H. Work is to provide the moneys to pay and take up the obligations of E. C. James, held by Thos. M. Rainhard, as the same mature, to wit: the sum of twenty-five thousand dollars ($25,000) and interest. Said J. H. Work will also pay, or cause to be paid, to said James, the sum of five thousand dollars cash ($5,000), on or before September 1, 1887.

> "E. C. J.
> "J. H. WORK.

"$10,000. Received this third day of March, 1867, the sum of ten thousand dollars ($10,000), on account of above memorandum.

> "EDWARD C. JAMES."

It seems to me clear that this agreement directly included any demand that the plaintiff might have against Work, based upon his

investment with Grant & Ward. In it, the plaintiff agrees to *assign* at any time, on demand, or hold subject to the order of Work, as to *collection, release, or other disposition thereof,* all his claims upon obligations of Grant & Ward, or for moneys paid therefor, *and all claims arising out of his dealings with said firm and the members thereof, as against said firm,* and the individuals thereof, *and all other persons* and bodies corporate.

This claim against the defendant was certainly a claim arising out of the plaintiff's dealings with Grant & Ward, and the agreement stated that the transfer was intended to be of the most comprehensive character, and to be evidenced and effectuated by all such instruments in writing as may be necessary, and for this agreement Work paid to plaintiff $30,000.

The agreement, therefore, contemplated the necessity of the execution, in the future, of assignments or releases, and in order to effectuate the expressed intention of the parties, the plaintiff by it agreed to hold subject to Work's order as to collection, release or other disposition thereof, his claims arising out of his dealings with the said firm, and was to execute such other instruments in writing as would be necessary, and thus the subsequent request by defendant that plaintiff would execute a formal assignment of his claim against Grant & Ward, was not evidence that the defendant understood that the agreement related only to the plaintiff's claim against Grant & Ward.

This was simply one of the instruments contemplated, and it was asked for so as to avoid the necessity of filing the original agreement of March 3, 1887, with the receiver. If any other instrument became necessary to effectuate the agreement of March third, plaintiff was bound to execute it, but so far as the agreement itself had the effect to release or discharge a claim or demand that existed, or in other respects itself effectuated the expressed intention of the parties, then it operated itself without the necessity of the execution of other instruments.

The fact that at this time plaintiff's relations with Work were friendly, and plaintiff believed that Work had acted in good faith, would not prevent this agreement from operating to release whatever claim he had against Work in the absence of proof that Work had knowledge that plaintiff understood the agreement as expressing

any meaning other than that naturally to be inferred from the language used, or that Work took any unfair advantage of the plaintiff when the agreement was executed.

Under these circumstances, if plaintiff subsequently discovered that he had a claim against Work that was included within the release of this agreement which he had not in mind when he executed it, and, therefore, had not intended to include within it, he could have relief only by an action to reform the agreement or if there was fraud on Work's part disaffirm the agreement and repay the money that he had received under it. He did neither, but on February eleventh, just before the commencement of this action, plaintiff called upon Work and made a demand for an accounting for the money that Work had received for plaintiff and which he had not paid to plaintiff, and when Work insisted that this agreement covered all claims that the plaintiff had against Work and that plaintiff should repay the $30,000 that Work had paid to him upon the execution of the agreement before he could enforce any demand that existed in consequence of the dealings with Grant & Ward, plaintiff expressly stated to Work that he had not come to undo that transaction, viz., the agreement of March 3, 1887, and he expressly reaffirmed it, and in his complaint in this action, he alleged the making of the agreement of March, 1887, and the receipt by him of $30,000 thereunder.

Thus, after all of the facts upon which he bases his cause of action had come to his knowledge he expressly reaffirms the contract of March 3, 1887, and makes no claim that the same did not correctly state the intention of the parties, or that its execution was induced by any fraud upon the part of the defendant.

The defendant in his answer denies that the $30,000 was paid to plaintiff or received by him on account of any money obtained by defendant from plaintiff as alleged in the complaint, but alleges as a separate and complete defense to the action that the plaintiff entered into an agreement in writing with defendant whereby, in consideration of the sum of $30,000, the plaintiff agreed with the defendant to finally settle, adjust and release and transfer all of plaintiff's claims of every nature and character, including all transactions had with this defendant, and that said sum of $30,000 was duly paid to plaintiff.

It may be that the release or agreement having been pleaded by the defendant as an affirmative defense the plaintiff would be deemed to have controverted such defense by traverse or avoidance as the case may require, and that he would have the benefit of any evidence he could produce to sustain said traverse or avoidance.

See *Kirchner* v. *N. H. S. M. Co.* (135 N. Y. 189), where it is stated: " If the plaintiff can show that by mutual mistake of the parties or by what is its equivalent, a mistake on his part and fraud on the part of his adversary, the present cause of action is embraced in the release, contrary to the intent of the parties, or contrary to his intent in case fraud is proven, he is entitled to an instruction to the jury to the effect that the release does not bar his right to recover."

But the mistake which would warrant a court of equity in reforming an instrument in writing must be one made by both parties to the agreement, so that the intent of neither is expressed in it, or it must be the mistake of one party by which his intention has failed of correct expression, and there must be fraud in the other party in taking advantage or obtaining a contract with the knowledge that one dealing with him is in error in regard to what are its contents. (*Rice* v. *Lorillard Insurance Co.*, 55 N. Y. 243.)

Where the court says : " Whatever may have been the intention of the insured, or his agent, there is nothing in the findings, nor in the evidence, which shows or has a tendency to show, that defendant or its agent purposed anything else than to insure property in Section C of the Patterson stores. Such being the case, it is not in the power of the court to reform the instrument, for thereby violence will be done to the intentions of the defendant."

See, also, *Paine* v. *Jones* (75 N. Y. 593), where the court, reiterating the principle, held that " the evidence authorized the finding of the trial court that the assignee of said defendant, without fraud, obtained just the contract which it from the first intended to ask and have, and which it demanded, and, therefore, it failed to show fraud or mistake authorizing the reformation of the contract."

No claim to reform this agreement appears to have been made by plaintiff in the court below. As before stated, he sets up the agreement in the complaint, alleging there that it was a mere transfer of his claim against Grant & Ward to Work. The court below, in its

charge to the jury, declined to hold, as matter of law, that the instrument was an actual and absolute release to Work by plaintiff, and left it to the jury to say whether or not the parties intended that there should be an entire relinquishment of any claim that plaintiff might have by any possibility against defendant, and left it to the jury to say whether it was really intended by plaintiff to do anything more than simply to assign what claims he had against Grant & Ward in order to put them in the hands of Work, that he could aggregate and get together all these claims and get out of them what he could for the benefit of himself or other persons in interest.

The court then adding : " I leave that to you, upon all the testimony, without recounting it or referring to it further, as to whether or not there was such an arrangement and such an agreement made outside of the terms of the written contract — whether there should be a discharge and satisfaction of those claims."

The finding on this question thus submitted to tne jury in favor of the plaintiff, would not justify a court in reforming the instrument, for the jury might find under these instructions that plaintiff did not intend or have in mind at the time, the relinquishment of any claim of the plaintiff against defendant, and consequently the plaintiff's claim was not discharged, but this finding would not have justified the court in directing a reformation of this agreement, for it is only where there is a mistake that is common to both parties or a mistake of one party and fraud on the other that will justify the reformation of the contract.

But assuming that there was a finding of fact that would justify a reformation of the contract, I am unable to find any evidence in the case to sustain such a finding.

The plaintiff testified that the first talk of the assignment occurred in the spring of 1886 when Work had spoken to plaintiff about purchasing his claim against Grant & Ward. On August 11, 1886, the plaintiff writes a letter to Work about taking up certain notes that Work had procured one Rheinhardt to discount for plaintiff, and upon plaintiff's return to New York in September, plaintiff and defendant had further negotiations about the purchase of plaintiff's claim against Grant & Ward. Plaintiff endeavored to ascertain the value of the claims and ascertained that they were not marketable

in Wall street and nobody could tell him what they were worth. In other words, he could find no purchaser, and subsequently Work agreed to give him $30,000 for them ; that the agreement was finally made on the 3d of March, 1887, and plaintiff says he went over to Work's office, and he (Work) stated that he would give me $30,000 for these claims "that we had been negotiating about. We sat down and wrote this paper and he signed it, and I signed my initial to it before he signed it, and then he gave me his check for $10,000, and I signed my name to the receipt which appeared on the paper." It appeared that the original agreement was in Work's handwriting. Work thus wrote the agreement out in plaintiff's presence, plaintiff signing it, and after signing it, received $10,000 of the $30,000. Work then gave the original agreement to plaintiff, who took it back to his office, copied it out, signing the copy and sent it back to Work.

It was upon the execution of this agreement that Work was willing to pay and did pay to plaintiff $30,000.

Plaintiff, a lawyer of experience and ability, thus executed the agreement not only after reading it, but after he had copied it out. And it is clear from all the testimony that the defendant did intend to include any claim that plaintiff might have against him.

The mere fact that when the plaintiff signed this agreement and received this $30,000 he did not have in mind the fact that the instrument that he executed would release Work from any claim that he might have against Work, would not justify, under any of the authorities, a court of equity in reforming the agreement.

If the intention of Work when he signed the agreement was in doubt, it seems to me the defendant should have been allowed to answer the question asked him on his redirect-examination, which upon objection taken by plaintiff was excluded, and to which defendant excepted where he was asked : " What did you at the time that paper was drawn understand was being transferred to you ? "

But as before stated there was no evidence that I can find after a careful examination of the whole record, to show that this contract did not carry out Work's intention at the time it was executed, or that Work knew that plaintiff understood the agreement in any other sense, or that plaintiff was induced to sign it by any fraud or deceit on Work's part.

There was, therefore, no finding in this case by the jury that there was either a mutual mistake of the parties in the execution of the agreement, or that there was any fraud on Work's part, nor was there any evidence to sustain such a finding.

The defendant at the end of the plaintiff's case, and also at the end of the whole case, moved that the complaint be dismissed on the ground that any claim plaintiff may have had against defendant was released by the instrument of March 3, 1887. That motion was denied, to which the defendant excepted, and I think that motion should have been granted, and the complaint dismissed.

I think, therefore, the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Judgment and order affirmed, with costs.