FLETCHER v. WHITLOW.

Opinion delivered February 20, 1904.

ACCOUNT—SURCHARGING.—When parties have mutually agreed upon a settlement of their dealings with each other, and have adjusted balances on the basis of such settlement, nothing short of clear and satisfactory evidence of fraud and mistake will justify the falsifying and surcharging of such settlement.

Appeal from Washington Chancery Court.

JAMES M. PITTMAN, Judge.

Suit by Whitlow, Lake & Co. against Robert Fletcher. Judgment for plaintiffs, from which defendant appeals.

Affirmed.

### STATEMENT BY THE COURT.

Robert Fletcher was in 1897 the owner of two sawmills, which he operated near Combs, Madison county. He resided at Combs, and carried on also a small mercantile business at that place. During the month of July of the year named he purchased a stock of goods from Whitlow, Lake & Co., a firm of merchants or traders doing business at Fayetteville, Arkansas. This stock of goods was purchased on credit, the vendors retaining title until payment of the purchase money, which amounted to the sum of $2,427.56. This money was not paid, and on the 14th of October following the sale Fletcher, for the ostensible purpose of settling this debt and certain other debts which Stuckey, an attorney at law and also a member of the firm of Whitlow, Lake & Co., held against him for collection, transferred to Whitlow, Lake & Co. his interest in the two sawmills and the stock of goods he then had on hand at his store in Combs. Whitlow, Lake & Co. assumed the payment of the debts mentioned held by Stuckey for collection. There was also a certain other claim which was a lien on the two sawmills. The total consideration for the transfer purported to be $2,900. After this transfer the mills and store were run in the name of Whitlow, Lake & Co., while Fletcher acted as their agent and manager in looking after the sawmills and store, for which it is said that he was to receive a salary of $35 per month. With the assistance of a clerk and bookkeeper the business was operated in this way until July, 1898, when the stock of goods was sold to other parties. After this Fletcher continued to operate the mills, ostensibly as the agent of Whitlow, Lake & Co., until some time in December following, when he and Whitlow, Lake & Co. entered into a contract by which they agreed to sell him one of the sawmills for

the sum of $1,200, retaining title until the payment of the purchase price. It was also agreed that Fletcher should assist in selling the lumber then on hand and in the collection of the outstanding accounts, and it was further agreed that when the amounts collected and the proceeds of the sales of lumber on hand amounted to the sum of $2,467.47, then both of the sawmills, all the accounts, lumber unsold and other property on hand, and which Fletcher had charge of for them, should become the property of Fletcher; it being stipulated that Whitlow, Lake & Co. should accept the amount named "in full"—meaning, as we understand the contract, that it should be accepted in full satisfaction of the note and all other debts due Whitlow, Lake & Co. by Fletcher. Besides Fletcher, W. P. Dennis and Charlesworth & Yount were to assist in looking after and disposing of lumber and property at Pettigrew in which Whitlow, Lake & Co. had an interest. After some months Whitlow, Lake & Co. came to the conclusion that these parties having control of their property were not acting fairly with them, and brought this action in equity in Washington circuit court to procure an accounting between themselves and Fletcher and the other parties having charge of the business. The complaint mentions the note for $1,200, to secure which they retained title to the mill, but does not expressly ask judgment for the same, but asks for an accounting and for all equitable relief.

Fletcher filed a separate answer and cross-complaint, and as the complaint was, on motion, dismissed· as to the other defendants, we need not notice the pleadings filed by them.

Fletcher states in his answer that he purchased in July, 1897, a stock of goods from the plaintiffs, but that he was induced to do so by W. L. Stuckey, a member of the firm, who, he says, persuaded him to take intoxicating drinks, and while under the influence of the same induced him to purchase the goods at a price largely in excess of their value. He then denies that after that purchase the plaintiffs were ever the owners of the goods or the sawmills, and states that the transfer made by him to plaintiffs in October, 1897, was only for the purpose of securing the payment of debts due by him to plaintiffs; that it was understood and agreed at the time that he was to remain the real owner of the property, and that the only interest the plaintiffs

had in it was to secure the payment of their claim against him. He further denies that he ever repurchased the mills from the plaintiffs, and denies that the agreement of December, 1898, was intended as a complete settlement between the parties. He denies that he is indebted to the plaintiffs in any amount, but, on the contrary, alleges that they have failed to allow him credits to which he is justly entitled, and that upon a full settlement they will be indebted to him in a large sum. He therefore asks for an accounting and for all proper relief. On the hearing the court found the issues in favor of the plaintiffs, and found that Fletcher was indebted to them in the sum of $1,290 after all just credits were allowed, and gave judgment and decree accordingly. Fletcher appealed.

*E. B. Wall,* for appellant.

Oral evidence is admissible to prove the nature of the transaction. 13 Ark. 116; 3 Ark. 337, 364; 5 Ark. 336; 7 Ark. 505; 18 Ark. 49; 27 Ark. 404; 31 Ark. 61; 40 Ark. 149; 2 J. J. Marsh, 472; 27 Ark. 510. The instrument was executed to secure an indebtedness, and would operate as a mortgage. 50 Ark. 112; 60 Ark. 387; 63 Ark. 40. Equity never aids one to perpetrate a fraud. 60 Ark. 513; 52 Ark. 207. The contract and bill of sale must be considered together. 49 Ark. 324; 39 Ark. 79.

*Watkins & Walker, Stuckey & Williams,* for appellees.

Equity has power to declare a deed or bill of sale a mortgage. This case does not fall within the rule. 60 Ark. 606.

RIDDICK, J. (after stating the facts). This is an appeal from a judgment of the circuit court of Washington county on the chancery side of the docket. Though the record in this case is very voluminous, containing nearly five hundred pages, yet there is hardly a question of law in the case. The entire controversy concerns disputed questions of fact in reference to dealings between Whitlow, Lake & Co., the plaintiffs, and Fletcher, the defendant. The evidence was taken before a notary public, who gave the attorneys great latitude in their examination of witnesses, and allowed them to repeat questions to the witnesses as often as desired. It was probably a dull season of the year, and

counsel on both sides availed themselves fully of the privilege granted. The result is a volume of testimony which it seems to us is much larger than was really necessary, and by which the vital facts of the case are more or less hidden and obscured. While the mass of this testimony, consisting to a great extent in needless repetitions, has added much to the labor of the court, we have endeavored to give it careful attention, though it is unnecessary that we should set it out or discuss it, and we shall only state our conclusions on the different points raised in the briefs which are necessary for a decision of the case.

First, as to the purchase of the stock of goods by Fletcher from Whitlow, Lake & Co. in July, 1897: Fletcher now contends that he was persuaded to take whisky by Stuckey, a member of the firm, and that while under the influence of this liquor he was induced to make the purchase of goods at an exorbitant price. But there is nothing to support this charge except the testimony of Fletcher himself, and he is contradicted in reference thereto not only by the testimony of other witnesses but by his own acts subsequent to the purchase, for he took charge of the goods, and, so far as the evidence shows, made no complaint about their quality or value until this suit was commenced, over two years afterwards. He certainly was not drunk during the whole of that time, and as the goods were in his custody until they were sold, he must have known their condition soon after the purchase. If he had been imposed upon, as he now says that he was, we think that it is almost certain that he would not have waited two years before making complaint. His contention on this point is so completely refuted by the facts in proof that his conduct in making and swearing to this charge has gone far to shake our confidence in the fairness of the other portions of his testimony. The evidence convinces us that Fletcher was somewhat inclined to drink liquor when he had a convenient opportunity. It is entirely probable that he had taken a drink on the day referred to. It may be true, to quote his own words, that, though not drunk, he was somewhat under the influence of drink when he purchased the goods; but we do not think there is any ground to put the blame for this upon anyone or anything except his own inclinations. The evidence does not show either that he was drunk or that he was led to purchase the goods by means

of drink, and we see no reason why he should be allowed any rebate from the price agreed to pay for the goods. His contention on this point is overruled.

As shown in the statement of facts, Fletcher failed to pay for the goods, and subsequently made out a bill of sale to plain-tiffs, transferring to them the remainder of the stock of goods and his interest in two sawmills in payment of the debt he owed plaintiffs and for certain debts he owed other parties and which they assumed, to the extent of about $400, the total consideration for the transfer being $2,900. Fletcher contends that this trans-fer, while in the form of an absolute sale, was in fact only made for the purpose of securing the debts mentioned, and that it was understood between the parties that the property was to be and remain his property.

The circuit judge found this issue also against Fletcher, but we are not so certain of the correctness of this finding. While it is supported by the evidence of several of the witnesses, still the testimony of some of the other witnesses is to the contrary, and some of the circumstances in the case point strongly to the conclusion that Fletcher had, or thought he had, an interest in the property after the sale. The letter written by plaintiff Stuckey, the testimony of plaintiff Lake in part, and the fact that Fletcher remained in charge of the property until by agreement and settlement of December, 1898, the title was transferred to him again on condition that he make the payment of the sums therein named, all tend in this direction. We do not mean to say that these facts are conclusive, or that the finding of the court on that point is wrong; but if the case turned on that question alone, we should feel some doubts about the justice of the judgment.

But, conceding that this transfer of October, 1897, was in effect only a mortgage, it does not by any means follow that the judgment of the circuit court is wrong on the whole case; for, whatever that transaction amounted to, Fletcher understood and agreed to it, and he knew his rights under it. And after the business had been carried on under that contract for about a year, he and the plaintiffs had a settlement by which it was agreed that upon the payment of a certain amount by Fletcher the property would be turned over and the title be vested in him again. This contract and settlement is in writing, and speaks for itself. Counsel

for Fletcher contends that this agreement of December, 1898, was not a complete settlement between Fletcher and the plaintiffs; but while it is true that the relations between the parties were not terminated by that contract, yet it fixed and settled the transactions between the parties up to the date of that agreement, and fixed the amount that Fletcher must pay in order to be relieved of further liability to them for such past transactions. Both the contract itself and the testimony of the witnesses in respect thereto show that it was a full settlement between the parties up to that date, and cannot be impeached except for fraud or mistake.

Counsel for Fletcher contends that this settlement was based on the transfer of October, 1897, and, if that transfer be held to be in effect only a mortgage, he contends that this contract of December, 1898, must be held invalid. But we see no force in this argument. As before stated, whatever the nature of that contract and transfer of October, 1897, the parties concerned understood it and governed themselves by it, and no doubt made their settlement of December, 1898, in reference to it. Fletcher made no complaint of this settlement until after this suit commenced. On the contrary, when his brother spoke to him about it soon after it was made, he expressed himself as satisfied with it. It is more than probable that these parties understood their own affairs, and it is not likely that any injustice was done by this settlement which they made between themselves. The law favors settlements, and courts will not open or disturb them but for cogent reasons. When parties have mutually agreed upon a settlement of their dealings with each other and have adjusted balances on the basis of such settlement, nothing short of clear and satisfactory evidence of fraud or mistake will justify the falsifying or surcharging of such settlement. *Hoyt* v. *McLaughlin,* 52 Wis. 280; *Bullock* v. *Boyd,* 2 Edw. Ch. 293; *Weed* v. *Dyer,* 53 Ark. 155.

We have given the evidence careful attention, and see no reason to believe that there was any fraud or mistake in this settlement to the injury of Fletcher. We are therefore of the opinion that the judgment of the court holding Fletcher liable for the payment of the note which he executed to plaintiffs upon such settlement was right, and it is therefore affirmed.