## NATIONAL UNION FIRE INSURANCE CO. v. SCHOOL DISTRICT No. 60.

### Opinion delivered December 17, 1917.

1.  APPEAL AND ERROR—HARMLESS ERROR.—A cause will not be reversed on appeal, because of an erroneous declaration or application of law by the trial judge, where no prejudice to the appellant is shown.

2.  APPEAL AND ERROR—ACTION ON INSURANCE POLICY—FAILURE TO PLEAD CONDITION PRECEDENT—HARMLESS ERROR.—An action was brought on a policy of tornado insurance, and appellant demurred generally to the complaint; and set up in his brief that the appellee had not alleged the performance of certain conditions precedent to its right of action. *Held*, under the facts and pleadings that appellant failed to show any prejudice resulting to it from the rulings of the court, in overruling the demurrer.

3.  APPEAL AND ERROR—INSTRUCTIONS—NOT RESPONSIVE TO THE ISSUES.—An instruction given by the court, although not responsive to the issues, is not cause for reversal, where no prejudice therefrom resulted to the appellant.

4.  RECEIPT IN FULL—NOT BINDING, WHEN—MISTAKE.—A receipt is not absolute or conclusive, if given under a mistake.

5.  CONTRACT—WRITING—CORRECTION FOR MUTUAL MISTAKE.—A written contract, executed under mutual mistake of the parties, is subject to inquiry and correction in a court of law as well as in equity.

6.  INSURANCE—"PAYMENT IN FULL"—CORRECTION FOR MISTAKE.—An insurance company paid the claimant for a loss, the draft reciting that it was in "full satisfaction, compromise and indemnity for all claims and demands for loss and damage by storm, May 20, 1916, to the property described in 'the policy." It appeared that the parties were mistaken at the time as to the amount necessary to repair the loss; *held*, the statements in the draft were not absolute or conclusive.

7.  INSURANCE—TORNADO—PROOF OF CONDITION UPON SUBSEQUENT DATE.—A building was damaged by a tornado in May, and very slightly damaged by another tornado in June. In an action on a tornado policy, for the damage done in May, *held*, under the facts, that evidence of its condition the following February, was admissible, it appearing that its condition in February was entirely due to the damage sustained the preceding May.

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

*J. W. Grabiel,* for appellant.

1.   The court erred in overruling the demurrer. The complaint does not allege the performance of the conditions precedent in the policy.  38 Ark. 127; Gould on Pleading (3 ed.) 175; 10 Ark. 416; Kirby's Digest, § § 623, 6119.

2.   The court erred in its charge to the jury as to substantial compliance with the conditions of the contract. 57 Ark. 461.

3.   It was error to refuse an instructed verdict for defendant.   The liability has been fully settled.   93 Ark. 383.   There was no fraud or mistake.

4.   Testimony as to the condition of the school in February, 1917, was improperly admitted.

*H. L. Pearson,* for appellee.

1.   The complaint stated a good cause of action.  All conditions precedent were waived.   83 Ark. 126; 74 *Id.* 72; 77 *Id.* 27; 94 *Id.* 21; 79 *Id.* 266; 77 *Id.* 41; 72 *Id.* 365; 89 *Id.* 111; 94 *Id.* 227; 83 *Id.* 575; 33 *Id.* 428.

2.   The instructions given are correct.  But no proper exceptions were saved and no request for other instructions asked.   111 Ark. 231; 116 *Id.* 260; 110 *Id.* 209; 106 *Id.* 315.

3.   The payment was not in full, as there was a mutual mistake.   86 N. W. 32; 70 *Id.* 761; 24 So. 936.

HUMPHREYS, J.   Appellee instituted suit in the Washington Circuit Court against appellant on a tornado insurance policy for damages alleged to have been done to its school building by a storm on May 20, 1916. The west end of the building was blown off the foundation five or six feet and the east end five or six inches.   The policy was made a part of the complaint and contained a "loss proof" clause to the effect that appellee would make written proof under oath of any loss that might occur within sixty days from the date of the loss.   It also

contained a conditional arbitration clause and other clauses of like nature unnecessary to set out in this opinion, as no dispute arose in the case concerning them.

A general demurrer was filed to the complaint charging that it failed to state a cause of action. The demurrer was overruled and appellant saved its exception to this ruling of the court.

Appellant then filed an answer, reserving all rights under the demurrer. The answer admitted the issuance of the policy and that it was in force and effect on the 20th day of May, 1916; but denied that the school building was injured by tornado or wind storm or both; denied that the district suffered damage in the amount of $400, or that it was indebted to the school district in any sum whatever. By way of further defense, it alleged that if the school district suffered any damage by reason of a casualty covered by the policy, same had been proved, adjusted, compromised and paid by appellant; and specifically alleged that appellee filed its proof of loss on account of the damage on May 20, 1916, mentioned in the complaint, and that same was fully adjusted and paid by appellant. Appellee filed reply, denying that the loss pleaded in the complaint had been proved, adjusted, compromised and paid by appellant; and denied that appellee had filed proof of the loss covering damage on May 20, 1916, mentioned in the complaint; and denied that any payment was made or offered because of such casualty, loss or damage set up in the complaint.

The cause was heard upon the pleadings, oral evidence and instructions of the court and a verdict rendered in favor of appellee for $240, upon which judgment was rendered.

The necessary proceedings were had and done and an appeal has been prosecuted to this court.

(1-2) The first contention made by appellant for reversal is that the complaint failed to state a cause of action in not pleading performance by appellee of the conditions precedent in the policy. It will be observed the demurrer is general. It does not point out any spe-

cific condition in the policy as being a condition precedent. The record does not disclose that appellant pointed out to the circuit court the defect in the pleadings he now complains of. So far as the record speaks, he now, for the first time, insists that the complaint should have averred that appellee had performed all the conditions precedent in the policy or should have alleged the waiver of said conditions by appellant. Even now appellant does not point to any particular provision in the policy as a condition precedent to recovery. It is alleged in the answer that appellee made proof of loss in accordance with the requirements of the policy, therefore no prejudice resulted to appellant according to its own allegations on account of appellee's failure to plead performance in this particular. Appellant also pleaded by way of answer a compromise settlement and payment of the loss incurred by tornado or wind storm on May 20, 1916, and went to trial on that issue. This clearly constituted a waiver of the conditions precedent in the policy, and, therefore, no prejudice resulted to appellant on account of the failure to plead performance on its part or waiver on appellant's part. Learned counsel for appellant is correct in his contention that when instruments providing for mutual undertakings are made the basis of actions at law, the rule of pleading requires that the plaintiff allege performance of all conditions precedent on his part or a waiver of them by the defendant. This abstract proposition of law can not be gainsaid. It is also true, however, that before an erroneous declaration or application of law by a trial court can avail a party on appeal, he must show that he was prejudiced thereby. No prejudicial error resulted to appellant on account of the action of the court in overruling the demurrer.

(3) But it is insisted that the court erred in submitting to the jury the question of whether the appellee had substantially complied with the conditions of the contract when the pleadings did not aver a substantial compliance, and when no proof was offered upon that issue. It is true an instruction has no place in the case if not

responsive to the issues presented by the facts and plead-
ings, treated as amended to conform to the facts; but as
stated with reference to overruling the demurrer in this
case, if no prejudice resulted to appellant by the action
of the court, the giving of such instructions can not work
a reversal of the case.   In two instructions given by the
court on other issues in the case, the court predicated
the right of appellee to recover upon a showing that it
had substantially complied with the contract in all things
on its part.   Compliance with the conditions of the policy
not being an issue in the case, the submission of that
question to the jury placed a burden upon appellee that
might have resulted in prejudice to it, but in no view of
the case, could have resulted in prejudice to appellant,
for the undisputed evidence showed that all conditions
precedent contained in the policy were either complied
with by appellee or waived by appellant.   Appellant does
not contend that appellee failed to comply with the con-
ditions imposed by the policy.   Unless there was a fail-
ure on the part of appellee to comply with the contractual
conditions in the policy, no real prejudice resulted to ap-
pellant by the erroneous trend or course of the trial.

(4-6)  Again, it is contended that appellant was enti-
tled to a peremptory instruction for the reason that there
was a complete settlement of the liability sued on.   The
building was repaired after it was damaged by the wind
storm and paid for out of a check issued by the insurance
company to the school district.   One of the disputed facts
in the case was which of the two parties assumed to make
the repairs.   The evidence was conflicting on the point.
T. N. Sondgrass, who moved the building back on the
foundation, and two of the directors, W. J. Vawter and
C. M. Buttry, testified that Jones employed Snodgrass to
repair the building.   W. W. Jones testified to the con-
trary, stating that he agreed to make the repairs but that
he employed Snodgrass at the instance of and for the
board of directors.   That question was submitted to the
jury under proper instructions, and the finding of the
jury was adverse to appellant.   There was ample evi-

dence in the record to support the finding of the jury to the effect that the insurance company assumed to and did make the **repairs.**

After the repairs were made and the costs thereof ascertained, the directors made proof of loss. Thereupon, a draft was issued to the school district by the insurance company, which is as follows:

"Loss No. 20493.    Pittsburgh, Pa., July 19, 1916.

"Draft No. 32128.

"Upon acceptance by the National Union **Fire Insurance** Company,

"The National Bank, Pittsburgh, Pa.,

"Will pay to (School District No. 60 the order of) ninety-five and 14/100 dollars, which payment evidenced by proper endorsement hereof, constitutes full **satisfaction,** compromise and indemnity for all claims **and demands** for loss and damage by storm May 20, 1916, to property described in Policy No. T-16214, issued at its H. O. F. D. Prairie Grove, Ark., agency, and said policy is hereby reduced in the amount of claim $95. To the National Union Fire Insurance Company of Pittsburgh, Pa. Claim, **$95.14.**

"Discount, $................Net $95.14.

"Nelson Reid,

"Assistant Secretary."

The draft was endorsed by W. J. Vawter and C. M. Buttry, school directors of School District No. 60, and the proceeds thereof were apportioned among the parties who had assisted Snodgrass in repairing the building. Jones, the agent of the company, and Vawter and Buttry, directors of the school district, had each performed some labor for Snodgrass during the time he made the repairs. The proof of loss, based upon the cost of the repairs, and the draft issued and cashed by the directors and expended in the payment of repairs, was taken by the parties under the belief that the building

had been restored to its former condition. The undisputed proof, however, disclosed that the repairs were not substantial in nature and that the building began to slip from the foundation in a few days after the repairs were made. It continued to move toward the north until it became necessary to prop it with logs, and, at or about the time of the institution of this suit, was from five to ten inches out of plumb and unfit for use. It is in evidence that a second injury occurred to the property in June, and proof of loss and payment for the damage done by the second wind storm was made in the same manner as the first. This last damage, however, was of little moment, the expense of making the repairs only amounting to $5. The real damage done to the building resulted from the wind storm on May 20, 1916. The draft issued in payment of the damage caused by the wind storm on May 20, 1916, was in effect a receipt, contractual in nature. It was recited in the draft that the payment of $95.14 was in "full satisfaction, compromise and indemnity for all claims and demands for loss and damage by storm, May 20, 1916, to the property described in the policy." The law as to the effect of receipts in full settlement and compromise of claims or accounts is well settled in this State. The rule announced in *Burton* v. *Merrick,* 21 Ark. 357, is as follows:

"A receipt expressed to be in full of all demands is only *prima facie* evidence of what it purports to be, and upon satisfactory proof being made that it was obtained by fraud, or given under a mistake, it may be inquired into and corrected in a court of law as well as in equity. But where the receipt is introduced by the party relying on it, and there is no attempt from the other side to prove that it was obtained by fraud, or given by mistake, it must necessarily operate in the particular case as conclusive evidence of what it purports to be on its face."

This rule has been affirmed from time to time in subsequent decisions. *Fletcher* v. *Whitlow,* 72 Ark. 234; *Kahn* v. *Metz,* 88 Ark. 363; *Cache Valley Lumber Co.* v. *Culver Co.,* 93 Ark. 383. The proof of loss was made un-

der the belief that the building had been substantially and permanently repaired. The compromise was made and the draft or receipt was issued and accepted under the same belief. It can be said with certainty in the light of the facts in this case that the compromise was made and the receipt or draft executed and received under the mutual mistake of all parties concerned, that the building had been restored to its former condition. The instant case falls clearly within the exception to the rule to the effect that a receipt is not absolute or conclusive if given under a mistake. A written contract executed under mutual mistake of the parties would, like a receipt, be subject to inquiry and correction in a court of law as well as in equity.

(7)    Lastly, it is insisted that the court erred in permitting testimony as to the condition of the school building on the 1st and 15th days of February, 1917, some seven months after the building was damaged. Immediately after the building was repaired, it began to slip and lean by degrees, and its condition became worse as time progressed. It received a second slight damage in June, but it is very clear under the evidence that the condition of the building in February was due to the damage sustained in May and not in June. The damage in June was inconsequential and so slight that its condition in February could not be traced to the damage received in June. The damage done in June was repaired at an expense of only $5. We think its condition in February, 1917, was fairly traceable to the damage done on May 20, 1916, and not too remote in time to be established by evidence. The judgment is affirmed.

McCULLOCH, C. J., (dissenting). I am unable to find in this record any justification for disregarding the written contract between the parties settling the controversy by compromise. The undisputed facts are that after the loss occurred the insurance company agreed to have the damage to the building repaired by a carpenter who was suggested by the school directors. There is a conflict in

the testimony as to who actually employed the carpenter, but none as to the fact that the directors selected him. The repairs were made and accepted by the directors, and the compromise settlement was reduced to writing in the form of a draft for the cost of the repairs and the directors signed the endorsement which recited the terms of the compromise. It was more than a mere receipt for the money. It was a contract for a settlement of the pending controversy.

This court has heretofore steadily adhered to the rule that such a contract can not be varied by parol testimony, nor set aside except for fraud or mistake. *Cleveland-McLeod Lumber Co.* v. *McLeod,* 96 Ark. 409; *Cherokee Construction Co.* v. *Prairie Creek Coal Mining Co.,* 102 Ark. 428; *Williams* v. *C., R. I. & P. Ry. Co.,* 109 Ark. 82; *K. C. S. Ry. Co.* v. *Armstrong,* 115 Ark. 123; *Hardister* v. *St. L., I. M. & S. Ry. Co.,* 119 Ark. 95; *Scullin, Receiver,* v. *Newman,* 127 Ark. 227.

In other words, the consideration mentioned in the contract and the agreement to accept it in full settlement of the controversy was of the essence of the contract and concluded the rights of the parties, unless there is sufficient proof of fraud or mutual mistake to justify a court in disregarding the contract. The distinction between a written receipt, which is only *prima facie* evidence of its contents, and a contract evidencing the mutual concessions of the parties has been recognized by this court in the decisions cited above. For instance, in *Cleveland-McLeod Lumber Co.* v. *McLeod, supra,* we said: "It is settled by authorities too numerous to mention that a receipt is only *prima facie* evidence of payment, which may be rebutted by proof that no payment was in fact made. A release, however, stands upon a somewhat different footing; and where there is an express agreement in writing for a release of enumerated demands or of all demands, this, like other contracts, is binding unless set aside on account of fraud or mistake, and can not be contradicted or varied by oral testimony." Again in the case of *Cherokee Construction Co.* v. *Prairie Creek Coal*

*Mining Co., supra,* we said: ''The parties, in order to avoid the evils of litigation, made a compromise and settlement of all matters and differences between them. The lease or instrument in question was something more than a mere receipt. It was the final embodiment in writing of the agreement between the parties. It is a comprehensive discharge, not only of the differences between the parties, but of all matters between them.''

There is no claim of fraud in this case which induced the execution of the contract, and the only mistake claimed is that the parties assumed in the contract that the building had been properly repaired. It is true that everybody, including the carpenter and one of the directors, who worked for the carpenter in making the repairs, thought the repairs were sufficient, but that was not such a mutual mistake as to justify a rescission of the contract. That was one of the contingencies which the parties settled in making the compromise agreement for final settlement of the controversy by payment of the sum spent in having the repairs made. There is no element in the case of the reliance by one party upon the superior knowledge of the other party, or its agents, concerning the subject-matter of the settlement, so as to afford grounds for setting aside the contract.

The result of the decision in this case is to release one of the parties from the binding force of the contract merely because he got the worst of the bargain, without fault of the other party, and without any mistake on either side as to what the parties intended to settle by the compromise.