BETTS *v.* BRUNDIDGE.

Opinion delivered December 1, 1930.

*U. A. Gentry* and *E. F. McFaddin,* for appellant.
*O. A. Graves,* for appellee.

BUTLER, J. In 1917 A. L. Betts and J. P. Brundidge were partners in the cotton business and remained so until November 8, 1918, when the partnership was dis-

solved by mutual agreement; Brundidge agreeing that the cotton on hand, which was the principal asset, should be valued at thirty-two cents a pound, and Betts agreeing that he would take over the business of the partnership and, when the liabilities were ascertained and deducted from the assets, he would pay to Brundidge one-half of the value of the assets over the liabilities. The bookkeeper of the concern made a statement of its affairs, and a tentative settlement was had on the basis of that statement, but it was understood between the parties that this settlement should not be deemed to be final but subject to revision and correction by Mr. Cameron, an accountant in the firm of E. F. Leathem & Company, who had been accustomed to make the audits for the partnership; that Cameron should check up on the books to see if the statement made by the bookkeeper represented the true condition of affairs, and, if the statement of the bookkeeper did not agree with Cameron's, the audit made by Cameron should govern. In February following Mr. Cameron completed his audit and corrected the statement made by the bookkeeper, deducting in certain particulars from the amount shown from the statement of the bookkeeper to be due Brundidge and adding to the statement as an asset a claim against the Federal Government for a refund for excess profit tax amounting to $18,163.90 which he said was due to be refunded, and that all that was necessary to be done was to file a claim and the United States Government would repay that amount of money. Settlement was accordingly made on Cameron's audit, the refund item being calculated as a part of the assets and one-half of the excess in value of assets over the liabilities paid to Brundidge.

On the advice of Cameron a written assignment of Brundidge's interest in the claim for refund of excess profit tax was made to Betts, who filed the claim with the proper department, and, after much correspondence, on or about March 4, 1924, Betts was informed by the Commissioner of Internal Revenue that his claim was dis-

allowed, and that, instead of the government owing him the amount of the claim, the firm of Betts & Cameron owed the government an additional tax of $37,572.45 more than the partnership had paid. Betts individually owed an income tax amounting to some $16,000, and he attempted to offset this by the claim for the refund of the excess profit tax of 1918 but without success. Finally, in 1926, the government closed the negotiations, and, after disallowing the claim for the refund, made demand for the amount it determined was due. In 1924 when Brundidge learned that the government was claiming an additional amount of tax for the year 1918, he took steps to protect his interest by employing a firm of lawyers and procuring the services of Mr. Cameron. In 1926 when the question of the refund was closed by the government and upon final denial of the claim, Betts made demand on Brundidge for one-half of that amount, to-wit, $9,081.95. Brundidge refused to make payment as demanded, and on November 28, 1928, Betts brought suit in the Hempstead Chancery Court to "reopen, surcharge and falsify the partnership settlement between the parties," alleging "that the settlement of said partnership was erroneous and based on mutual mistake of the parties in good faith believing that the Federal Government in fact owed said partnership, * * * and the same constituted the value and positive asset of said partnership." Brundidge answered denying that the settlement was the result of mutual mistake or that said settlement should be reopened, and alleged in substance that in the settlement the parties dealt at arm's length, and that it was "expressly understood and agreed * * * that it was a full and complete settlement of all partnership affairs, and that neither should at any time thereafter be liable the one to the other in any way whatever on account of said partnership business, nor in the sale of the assets thereof, regardless of whatever of assets of said firm should be more or less than the amounts agreed upon in the settlement and regardless of whether

any of the assets had any value whatever." Other matters were pleaded in the answer as a defense to the action which will not be set out, as a consideration of these matters is unnecessary for a determination of this case.

The case was heard on oral testimony, and the court denied the prayer of the complainant's bill and by its decree found that "there is no equity in the complaint and that the defendant is not indebted to plaintiff in any sum whatever," dismissing said complaint. From that finding and decree this appeal is prosecuted.

There is but little dispute as to the facts above narrated, the disputed matter being the understanding with respect to the settlement based on Cameron's audit and particularly the item for refund of the excess profit tax; Betts claiming and testifying that the understanding with reference to the refund item was that, if it was not collected, Brundidge was to repay to him one-half that sum. He stated that he filed the claim and made diligent effort to collect it, employing Cameron for that purpose, and that Brundidge took active part in the effort to secure its allowance. He discussed the progress they were making with Brundidge and finally, when claim was denied, demanded payment of him.

Touching the time the alleged agreement was made by Brundidge to repay Betts, if the government denied the claim, the following dialogue occurred on the witness stand between Betts and appellee's attorney:

"Q. Was that agreement made at the time you settled with him on the Cameron audit—if the government didn't pay he would pay? A. I don't know whether he did or not. We looked upon it as a legal claim against the government. Q. Did he tell you that at the time he settled, or did you just think it would be settled in that way? A. No; he assigned it to me—his part of it—$9,000—and he was urging Mr. Cameron (interrupted)— Q. Now, wait a minute; I understand that went in as assets, and he got credit for $9,000, but at the time you

made settlement on Cameron's audit was anything said as to whether or not he would make it good if you didn't collect it? A. I don't recollect about that, but I suppose it was because we looked upon it as a valid claim against the government."

To corroborate his testimony, telegrams and certain letters were introduced during the cross-examination of Brundidge, passing between him and Cameron in March, 1924. The most these show is that the claim for refund had been denied, with the opinion expressed by Cameron that Betts would claim return of half the sum paid by him to Brundidge with an intimation that Brundidge ought to pay it, and a denial by Brundidge that he was under any obligation to do so; that he wanted to do right, but would have to consider further before determining what he would do.

Brundidge stated in effect: that the settlement was based on the statement prepared by Cameron, and it was understood to be and was a full and final settlement of the affairs of the partnership without any promise on his part to make good wholly or in part any claim listed as an asset which might prove worthless. That he surrendered all the tangible assets of the co-partnership and assigned in writing all interest in the claim for refund of excess profit taxes, and had no further connection with any of the matters connected with the former partnership or with Betts or Cameron, except when he was informed that the United States Government was claiming an additional excess profit tax and that he was liable for and might be called upon to pay the whole amount, he took such action as he could to protect his interests, but at no time agreed to pay Betts any part of the refund claim that had been denied by the government.

This was substantially all the evidence, except that contained in the testimony of a witness who qualified as an expert accountant and gave his opinion regarding the validity of claims made and disallowed by the govern-

ment, which we think, was not material to the question in issue.

1. In order to support the contention that the settlement was entered into because of mutual mistake of the parties and to entitle one to have the settlement reopened, surcharged and falsified, such mutual mistake must be affirmatively shown by the evidence. *Continental Supply Co.* v. *Robertson,* 166 Ark. 52, 265 S. W. 659. And the decree of the chancellor will not be disturbed unless it appears to be against the clear preponderance of the evidence.

The issue of fact was squarely presented to the trial court, and, while there was no specific finding of fact, the finding made that the complaint was without equity necessarily implies that the chancellor passed on the question of fact and found adverse to the contention of the appellant. Under the rule stated, we are of the opinion that the finding of the trial court was not against the preponderance of the evidence, and that the settlement tentatively entered into in November, 1928, and finally consummated on the basis of the auditor's statement in February, 1929, was final and conclusive. It is evident from the testimony of Mr. Betts himself that any agreement that Brundidge made or thought was made was subsequent to the settlement based on the account stated by Cameron. This is disclosed by his cross-examination, as it is apparent from his statement that he did not know whether Brundidge did or did not agree to repay him if the government did not pay the claim—that he took the claim as an asset because he thought it was a legal claim against the government, and the mistake made was in this assumption.

To justify the relief sought, the appellant invokes the principle that "an account in which items have been entered or omitted through fraud, mistake, accident or undue advantage may be falsified or surcharged even after there has been a settlement and a payment of the balance found due," and cites *Fletcher* v. *Whitlow,* 72

Ark. 234, 79 S. W. 773, and a number of other Arkansas cases supporting the principle announced. The trouble with the appellant's contention in this case is that this principle finds no application to the facts as found by the chancellor, for there was no fraud, accident, or undue advantage shown or even claimed to have existed, and the mistake which arose was not one of fact but of law regarding the validity of the claim listed by Cameron. This arose from the too ready credence of the appellant in the opinion of Cameron on a legal question. Cameron forsook the practice of his art to assume the position of an authority on the law, as is not an infrequent practice of auditors, for this is observed in nearly every lawsuit in which they appear.

The case of *House* v. *Weschler*, 104 App. Div. 124, 93 N. Y. S. 593, is cited as a case in point and as based on facts similar to those of the instant case, which was a suit for the reformation of a contract of co-partnership settlement because of mutual mistake of fact and for recovery of money paid in excess of the true amount by reason of such mutual mistake. But in that case there was, indeed, a mistake of fact because the bookkeeper who was entrusted with the duty of preparing the statement of account (as Cameron was in the instant case) inadvertently enumerated an asset which did not exist and omitted an undoubted liability of which he was unaware. The precise value of the business was ascertainable by the mere process of calculation, and the parties were both mistaken in believing that the process had been correctly performed. Here, however, as before stated, no such mistake existed, but simply an unwarranted reliance by the appellant on the opinion of Cameron which was not shared by the appellee, who stated that he knew the asset in controversy was doubtful. The appellant argues that, if that was true, he should have so advised his partner Betts, and by this statement he convicts himself of concealment or of over-reaching his partner. This is not so. All of the facts relating to the claim were equally known

to Betts and Brundidge, and the difference, if any, which existed was merely in the weight given to the opinion of Cameron. Brundidge in his testimony specifically denied that at any time he ever agreed to make good any claim or asset that might be found to be uncollectable, but insisted that there was a full, final and complete settlement by which they both agreed to abide. The telegram of Cameron, taken in connection with the reply of Brundidge to it and Cameron's subsequent letter, is not sufficient in connection with the testimony of Betts to overcome the finding of the chancellor under the rule announced.

In this case there was a settlement based on the written statement of account made by Cameron which nothing short of clear and satisfactory evidence would be sufficient to overturn, and, as stated, in our opinion there was no mistake of fact. It is a settled rule that contracts of parties deliberately entered into will not be disturbed merely for mistakes of law. As defined in *Palmer* v. *Cully*, 52 Okla. 454, 153 Pac. 154, Ann. Cas. 1918E, 375, cited by the appellee, "A mistake of law happens when a party having full knowledge of the facts comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference arising from an imperfect or incorrect exercise of a judgment upon the facts as they really are," and in *People's Savings Bank & Trust Co.* v. *Hausman,* 171 Ark. 680, 286 S. W. 865, we said: "It is a principle of almost universal application that a mistake of one of the parties to a contract concerning its legal effect will not, in the absence of fraud or misrepresentation, afford grounds for relief against the performance of the contract." And in *Blackburn* v. *Texarkana G. & E. Co.,* 102 Ark. 158, 143 S. W. 588, "where one voluntarily makes a payment upon a claim with knowledge of the facts, or under such circumstances that he is affected with such knowledge, then he cannot recover back such payment upon the ground that the asserted claim was unenforceable."

On the conclusions reached, it is obvious that the case must be affirmed, and it will therefore be unnecessary to consider the other questions presented by counsel in their respective briefs.  Affirmed.